IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

LAURA M. WALLS, Individually and )
as Executor of the Estate of ROBIE )
W. WALLS, )
                         )
          Plaintiff, )
                         )
          v. )          1:20cv98
                         )
FORD MOTOR COMPANY, et al., )
                         )
          Defendants. )

## MEMORANDUM OPINION AND ORDER

This case comes before the Court on "Plaintiff's Motion to Compel Written Discovery and Motion for Sanctions Directed to CRA Trailers, Inc. f/k/a Great Dane Trailers, Inc." (Docket Entry 155) (the "First Motion") and "Plaintiff's Motion to Compel the Rule 30(b)(6) Corporate Representative Deposition of CRA Trailers, Inc. f/k/a Great Dane Trailers, Inc. and to Compel Documents" (Docket Entry 161) (the "Second Motion") (collectively, the "Motions"). For the reasons that follow, the Court will grant in part and deny in part the Motions.

## BACKGROUND

Alleging claims of defective design, failure to warn, breach of implied warranty, gross negligence, and conspiracy, Robie W. Walls (the "Decedent")[1] and his wife Laura M. Walls (the

---

    1 Robie Walls died during the pendency of this action. (See Docket Entries 112 (Notice of Death), 118 (motion to substitute Laura Walls as executor of her husband's estate), 119 (order (continued...)

"Plaintiff") initiated this action against numerous entities (collectively, the "Defendants"), including CRA Trailers, Inc. f/k/a Great Dane Trailers, Inc. ("CRA"). (Docket Entry 1 (the "Original Complaint"), ¶¶ 16–37, 51–96; see also Docket Entry 138 (the "Operative Complaint").)[2] The Operative Complaint generally alleges that Decedent died from mesothelioma (Docket Entry 138, ¶ 2), which he developed after "[his] cumulative exposure to asbestos" (id. ¶ 9). More specifically, "Decedent [] worked with, or in close proximity to others who worked with, . . . asbestos-containing products and other asbestos-containing materials manufactured and/or sold by Defendants." (Id., ¶ 11.) As concerns CRA, the Operative Complaint alleges that "CRA . . . mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing Great Dane trailers." (Id., ¶ 23.)

_____

1(...continued)
granting substitution).)

2    Two amendments to the Original Complaint reflected the addition and removal of several Defendants. (See Docket Entry 86 at 2; Docket Entry 135 at 1.) The latter amendment also "conform[ed] the language of the [Operative [C]omplaint to reflect [Decedent's] death . . . and to add an additional cause of action alleging [Decedent's] wrongful death" (Docket Entry 135 at 1).

2

After the parties commenced discovery (see Docket Entry 76 (Joint Rule 26(f) Report); Text Order dated Apr. 6, 2020 (adopting joint report with one clarification)), Plaintiff issued written discovery to CRA, including 30 interrogatories (Docket Entry 156-3 ("Interrogatories")) and 59 requests for production (Docket Entry 160-1 ("Document Requests")). CRA responded on June 3, 2020, asserting numerous objections (including a preliminary statement and general objections) and providing some answers and documents. (See Docket Entries 156-4 ("Answers to Interrogatories"), 156-5 ("Responses to Document Requests").) Daniel E. Carter ("Carter"), "an authorized representative for CRA" (Docket Entry 156-4 at 20), verified CRA's Answers to Interrogatories under oath (see id.).

**A. CRA's Deposition**

Thereafter, Plaintiff noticed, pursuant to Federal Rule of Civil Procedure 30(b)(6) ("Rule 30(b)(6)"), the deposition of CRA's corporate representative to take place on August 3, 2020. (Docket Entry 156-6 (the "Notice"). The Notice listed 43 deposition topics (in "Exhibit A") and directed CRA to produce "[a]ny and all documents relating to any factual disagreements by [CRA] with the previous sworn testimony of [Decedent]" (id. at 10)[3] and "[a]ll documents related to every subject contained in Exhibit A in any manner" (id.). The topics in Exhibit A included, inter alia, the

_____

3 Plaintiff deposed Decedent in February 2020, shortly after commencing this action. (See Docket Entries 156-1 (excerpts from Decedent's deposition), 172-12 (full transcript).)

sale of tractor-trailers or any associated parts by CRA to the
"Premises at Issue" (id., ¶¶ 22, 23, 31, 32), a term defined to
mean certain businesses during particular years (id. at 4), as well
as information relating to CRA's net worth (id., ¶¶ 17, 30). CRA
responded, objecting to the Notice and the requests for production
therein (to include general objections) (see Docket Entry 156-12 at
2-4), refusing to provide information about CRA's net worth (see
id., ¶¶ 17, 30), and incorporating its earlier Responses to
Document Requests (see id. at 18).

The parties then agreed to delay CRA's deposition several
times.[4] On January 20, 2021, shortly before the then-rescheduled
deposition, CRA produced additional records "revealing the sale of
hundreds of [CRA] brake blocks to [Decedent's] workplaces" (Docket
Entry 156 at 6; see also Docket Entry 156-13 (the "First January
Production")). In an email notifying counsel for Plaintiff
("Plaintiff's Counsel") about the First January Production, counsel
for CRA ("CRA's Counsel") described such documents as "responsive
to [the Notice]." (Docket Entry 156-18 at 4-5.) The parties then
elected not to proceed with the deposition as scheduled because
CRA's corporate representative had fallen ill. (See Docket Entry
156-11 at 2.) On January 29, 2021, three days before the twice-
rescheduled deposition, CRA again provided Plaintiff with
additional records showing sales between CRA and another one of

---

4 On each occasion, Plaintiff tendered the Notice (in amended
form). (See Docket Entries 156-7, 156-8.)

Decedent's employers. (See Docket Entry 156 at 6; see also Docket Entry 156-14 (the "Second January Production").)

The Rule 30(b)(6) deposition ultimately took place on February 1, 2021. (See Docket Entries 156-16 (rough draft transcript), 162-1 (finalized transcript).) In response to questions from Plaintiff's Counsel about the First January Production, Carter explained that CRA maintains some records on microfilm (see Docket Entry 162-1 at 6-9) and possesses a list reflecting "the order number referenced with the customer, the location it was sold out of, and the dates the order was taken in on our older microfilm up through about 1985" (id. at 8). Carter testified that he used that list (the "Sales Index") to locate the records comprising the First January Production. (See id. at 8-9.) Plaintiff's Counsel sought to mark the Sales Index as an exhibit, and CRA's Counsel objected, invoking the work-product doctrine. (See id. at 11.)

Later in the deposition, Plaintiff's Counsel questioned Carter about the basis for his knowledge about CRA's sale of brake parts and whether he had spoken to other CRA employees about such topic. (See id. at 47, 62-63.) That inquiry led Carter to identify three retired CRA employees with whom he had discussed, at some point during his employment with CRA, "issues regarding the use of asbestos brakes" (id. at 62).

At the conclusion of Carter's testimony, Plaintiff's Counsel expressed the view that "th[e] deposition [wa]s not completed" (id. at 68). CRA's Counsel later agreed that Plaintiff could continue

5

the deposition, "if [she] determine[d] that there [wa]s a need to [do so]" (Docket Entry 162-3 at 5). (See id. at 5-6 (documenting email from Plaintiff's Counsel asking whether CRA would "produce [] Carter again" and email from CRA's Counsel agreeing to that proposal).)

## B. The First Motion

On February 4, 2021, Plaintiff filed the First Motion, asserting that "CRA ha[d] failed to timely and reasonably search for and produce documents responsive to written discovery requests" (Docket Entry 155 at 1), "lodged bad faith objections to [such] requests" (id.), "failed to timely correct inaccurate discovery responses" (id.), and "reasserted inaccurate statements about critical issues in this case, months after CRA knew that [it]s sworn answers were inaccurate and misleading" (id.). On those grounds, the First Motion requests that the Court strike CRA's objections (including its "preliminary statement and general objections," as well as its objections based on privilege), compel written discovery from CRA, and issue sanctions (including payment of Plaintiff's attorney's fees). (See id. at 3; see also Docket Entry 156 (the "First Memorandum") at 17.) Plaintiff attached numerous exhibits to the First Memorandum, including copies of correspondence between Plaintiff's Counsel and CRA's Counsel (as evidence of their unsuccessful attempts to meet and confer on the foregoing subjects). (See Docket Entry 156 at 18 (Certificate of

6

Consultation referencing Docket Entries 156-9, 156-10, 156-11, 156-17, 156-18, 156-19, 156-20, 156-21).)  CRA responded in opposition to the First Motion (Docket Entry 160 (the "First Response")), and Plaintiff replied (Docket Entry 163 (the "First Reply")).

## C. CRA's Supplemental Responses and Production

On February 18, 2021, the same day CRA filed the First Response, CRA also supplemented its written discovery responses. (See Docket Entries 160-2 ("Supplemental Answers to Interrogatories"), 160-3 ("Supplemental Responses to Document Requests")).  With respect to its Answers to Interrogatories, CRA generally maintained its previous position (see Docket Entry 160-2 at 2–5 (restating preliminary statement and general objections)) but represented that, "after reasonable investigation[, CRA] ha[d] identified records relating to [numerous] trailer shop orders, purchasers, dealers or branches, and dates that may relate to the 'Premises at Issue'" (id., ¶ 7 (referencing First January Production and Second January Production); see also id., ¶ 23 (generally citing Carter's deposition testimony and incorporating its supplemented answer to Interrogatory 7)).  CRA supplemented its Responses to Document Requests in similar fashion, reasserting its previous objections (see Docket Entry 160-3 at 2–4) but indicating that it had identified and produced potentially responsive records (see id., ¶ 6; see also id. ¶¶ 11, 14, 26 (continuing to object but incorporating supplemented response to Document Request 6).)  That

7

same day, CRA also provided "[d]ocuments relating to engineering changes," which Plaintiff's Counsel had questioned Carter about during the Rule 30(b)(6) deposition, as well as "axle certification documents." (Docket Entry 162-3 at 2-3 (email describing production of thousands of pages of documents).)

### D. The Second Motion

On February 25, 2021, Plaintiff filed the Second Motion, which contends that CRA (by its representative Carter) had failed to provide certain documents and information and further neglected to conduct an adequate investigation before the Rule 30(b)(6) deposition. (See Docket Entry 161 at 1-2.) Accordingly, the Second Motion seeks "an order from this Court compelling a fully prepared witness that is prepared to address its discovery deficiencies, produce the relevant documents requested in the . . . [N]otice, and to properly discuss what is known or reasonably available to CRA regarding the requested topics noticed in its deposition." (Id. at 2; see also Docket Entry 162 (the "Second Memorandum") at 2.) CRA likewise opposed the Second Motion and filed a supporting memorandum (Docket Entry 172 (the "Second Response")), and Plaintiff replied (Docket Entry 174 (the "Second Reply")).

### E. Subsequent Production

After Plaintiff filed the Second Motion, but before CRA submitted the Second Response, CRA provided additional discovery.

More specifically, on March 2, 2021, CRA produced "engineering records responsive to [P]laintiff's requests for documents made during or after the [Rule 30(b)(6)] deposition" (Docket Entry 172-7 at 2). (See id. (email from CRA's Counsel referencing production of more than 2,000 pages of documents).) On March 4, 2021, CRA produced another four sets of documents, consisting of hundreds of pages of "parts catalogues responsive to [P]laintiff's requests for documents made during or after the [Rule 30(b)(6)] deposition" (Docket Entry 172-8 at 2). (See id. (email memorializing production of "Great Dane Heavy Duty," "Great Dane Trailer Parts Catalogue Series 21 Vans," "Great Dane Trailers," and "Rockwell Brake and Trailer Axle Parts").)

## DISCUSSION

### I. Relevant Standards

### A. The Scope of Discovery

"The purpose of discovery is to provide a mechanism for making relevant information available to the litigants." Fed. R. Civ. P. 26 advisory committee's notes, 1983 Amendment. Under Federal Rule of Civil Procedure Rule 26 ("Rule 26"),

> [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

9

Fed. R. Civ. P. 26(b)(1). "The parties and the court have a
collective responsibility to consider the proportionality of all
discovery and consider it in resolving discovery disputes." Fed.
R. Civ. P. 26 advisory committee's notes, 2015 Amendment; <u>see also
id.</u> (explaining that Rule 26 imposes an "obligation o[n] the
parties to consider the[ proportionality] factors in making
discovery requests, responses, or objections"). In turn, relevancy
"essentially involves a determination of how substantively the
information requested bears on the issues to be tried." <u>Mills v.
East Gulf Coal Preparation Co.</u>, 259 F.R.D. 118, 131 (S.D.W. Va.
2009) (internal quotation marks omitted). "Information within this
scope of discovery need not be admissible in evidence to be
discoverable." Fed. R. Civ. P. 26(b)(1).

Nevertheless, "the simple fact that requested information is
discoverable . . . does not mean that discovery must be had. On
its own initiative or in response to a motion for protective order
under Rule 26(c), a district court may limit [discovery] . . . ."
<u>Nicholas v. Wyndham Int'l, Inc.</u>, 373 F.3d 537, 543 (4th Cir. 2004).
Moreover,

> the [C]ourt must limit the frequency or extent of
> discovery otherwise allowed by the[ Federal Rules of
> Civil Procedure (the "Rules")] or by local rule if it
> determines that:
>> (i) the discovery sought is unreasonably cumulative
>> or duplicative, or can be obtained from some other
>> source that is more convenient, less burdensome, or
>> less expensive;
>> (ii) the party seeking discovery has had ample
>> opportunity to obtain the information by discovery
>> in the action; or

10

> (iii) the proposed discovery is outside the scope
> permitted by Rule 26(b)(1).

Fed. R. Civ. P. 26(b)(2)(C). "District courts enjoy nearly unfettered discretion to control the timing and scope of discovery." Hinkle v. City of Clarksburg, 81 F.3d 416, 426 (4th Cir. 1996); accord Cook v. Howard, 484 F. App'x 805, 812 (4th Cir. 2012) (observing that "[d]istrict courts are afforded broad discretion with respect to discovery").

### B. Making and Responding to Written Discovery Requests

"The Rules provide a number of discovery devices, including [written interrogatories and] requests for production of documents . . . ." Kinetic Concepts, Inc. v. ConvaTec Inc., 268 F.R.D. 226, 240 (M.D.N.C. 2010). With respect to the former, Federal Rule of Civil Procedure 33 ("Rule 33") requires that a litigant answer each interrogatory "separately and fully in writing under oath." Fed. R. Civ. P. 33(b)(3). If a litigant declines to answer an interrogatory based on an objection, "[t]he grounds for objecting . . . must be stated with specificity." Fed. R. Civ. P. 33(b)(4). "Mere recitation of the familiar litany that an interrogatory . . . is overly broad, burdensome, oppressive and irrelevant will not suffice." Momah v. Albert Einstein Med. Ctr., 164 F.R.D. 412, 417 (E.D. Pa. 1996) (internal quotation marks omitted). In other words, general or boilerplate objections to discovery requests lack validity. See Kinetic Concepts, 268 F.R.D. at 241 (collecting cases).

11

As concerns requests for production of documents, Federal Rule of Civil Procedure 34 ("Rule 34") requires that "[t]he request . . . describe with reasonable particularity each item or category of items to be inspected." Fed. R. Civ. P. 34(b)(1)(A). In turn, "the response must either . . . permit[ inspection] as requested or state with specificity the grounds for objecting to the request, including the reasons." Fed. R. Civ. P. 34(b)(2)(B). "[W]hile it is not *per se* unreasonable for a party to object on the basis that a request is overly broad, burdensome, or seeks irrelevant information, the objecting party has an obligation to show specifically why responding to the request would create a burden or how the request is overly broad in relation to the claims and defenses presented in the litigation." <u>Patrick v. Teays Valley Trs., LLC</u>, 297 F.R.D. 248, 256 (N.D.W. Va. 2013). Furthermore, "[a]n objection must state whether any responsive materials are being withheld on the basis of that objection." Fed. R. Civ. P. 34(b)(2)(C).

Rule 26 also addresses the mechanics "[w]hen a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material," Fed. R. Civ. P. 26(b)(5)(A). In particular, "the party must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed — and do so in a manner that, without revealing information itself privileged or protected, will enable other

12

parties to assess the claim." <u>Id.</u> "[T]he party claiming [such privilege or] protection bears the burden of demonstrating [its] applicability . . . ." <u>Solis v. Food Emps. Lab. Rels. Ass'n</u>, 644 F.3d 221, 232 (4th Cir. 2011).

"A party can sustain this burden through a properly prepared privilege log that identifies each document withheld, and contains information regarding the nature of the privilege/protection claimed, the name of the person making/receiving the communication, the date and place of the communication, and the document's general subject matter." <u>Sky Angel U.S., LLC v. Discovery Commc'ns, LLC</u>, 28 F. Supp. 3d 465, 483 (D. Md. 2014). If the requesting party, upon review of the privilege log, disputes the applicability of the privilege or protection, the asserting party must "establish[] an evidentiary basis — by affidavit, deposition transcript, or other evidence — for each element of each privilege/protection claimed for each document or category of document." <u>Id.</u> "[C]ourts have generally found that the failure to produce a timely or sufficient privilege log may constitute a forfeiture of any claims of privilege." <u>Wellin v. Wellin</u>, Nos. 2:13-CV-1831, 2:13-CV-3595, 2:14-CV-4067, 2015 WL 9850704, at *2 (D.S.C. Dec. 4, 2015) (unpublished) (collecting cases), <u>report and recommendation adopted</u>, 2016 WL 199625 (D.S.C. Jan. 15, 2016) (unpublished).

The work-product doctrine only applies to materials "prepared *because* of the prospect of litigation when the preparer faces an actual claim or a potential claim following an actual event or

13

series of events that reasonably could result in litigation." National Union Fire Ins. Co. v. Murray Sheet Metal Co., 967 F.2d 980, 984 (4th Cir. 1992). Conversely, "materials prepared in the ordinary course of business or pursuant to regulatory requirements or for other non-litigation purposes" do not qualify for such protection. Id. Especially given that "litigation is an ever-present possibility in American life, . . . [the Court must d]etermin[e] the driving force behind the preparation of each requested document." Id.

Finally, Rule 26 also imposes a continuing duty on litigants during discovery, such that

> [a] party . . . who has responded to an interrogatory[ or] request for production . . . must supplement or correct its disclosure or response . . . in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing . . . .

Fed. R. Civ. P. 26(e).

### C. Deposing Organizational Defendants

Federal Rule of Civil Procedure 30 ("Rule 30") authorizes a party to "depose any person, including a party . . . by oral questions," Fed. R. Civ. P. 30(a)(1), and requires that the deposing party "give reasonable written notice to every other party," Fed. R. Civ. P. 30(b)(1). Rule 30 contemplates that a party may depose not just natural persons but also "a public or

14

private corporation, a partnership, an association, a governmental agency, or other entity," Fed. R. Civ. P. 30(b)(6). As far as the procedure for deposing an organization,

> Rule 30(b)(6) imposes burdens on both the discovering party and the designating party. The party seeking discovery through a Rule 30(b)(6) deposition is required to describe "with reasonable particularity the matters on which examination is requested." Once served with the deposition notice under Rule 30(b)(6), the responding party is required to produce one or more witnesses knowledgeable about the subject matter of the noticed topics.

Great Am. Ins. Co. of N.Y. v. Vegas Constr. Co., 251 F.R.D. 534, 538 (D. Nev. 2008) (internal citation omitted).

Although Rule 30(b)(6) requires that such designee possess knowledge about the noticed topics, "[a]bsolute perfection is not required . . . . The mere fact that a designee could not answer every question on a certain topic does not necessarily mean that the corporation failed to comply with its obligation." QBE Ins. Corp. v. Jorda Enters., Inc., 277 F.R.D. 676, 691 (S.D. Fla. 2012). Rule 30(b)(6) undoubtedly "imposes a duty to prepare the designee[] . . . [that] goes beyond matters personally known to the designee or to matters in which that designee was personally involved[,] . . . [but t]he more difficult issue is how extensively the designee or designees must prepare." Wilson v. Lakner, 228 F.R.D. 524, 528 (D. Md. 2005) (internal quotation marks omitted). In one court's view, Rule 30(b)(6) obligates an organization to "make a conscientious good-faith endeavor to designate the persons having knowledge of the matters sought by [the deposing party] and

15

to prepare those persons in order that they can answer fully, completely, unevasively, the questions posed by [such party] as to the relevant subject matters." <u>Mitsui & Co. (U.S.A.), Inc. v. Puerto Rico Water Res. Auth.</u>, 93 F.R.D. 62, 67 (D.P.R. 1981).

### D. Obligations of Counsel During Discovery

Importantly, "[t]he civil discovery process is to be engaged in cooperatively." <u>Mills</u>, 259 F.R.D. at 130. To that end, this Court's Local Rules direct "counsel to conduct discovery in good faith and to cooperate and be courteous with each other in all phases of the discovery process." M.D.N.C. LR 26.1(b)(1). Similarly, "Rule 26(g) imposes an affirmative duty to engage in pretrial discovery in a responsible manner that is consistent with the spirit and purposes of Rules 26 through 37." Fed. R. Civ. P. 26 advisory committee's notes, 1983 Amendment, Subdivision (g). "[T]he spirit of the [R]ules is violated when advocates attempt to use discovery tools as tactical weapons rather than to expose the facts and illuminate the issues . . . ." Fed. R. Civ. P. 26 advisory committee's notes, 1983 Amendment; <u>see also</u> <u>Wagner v. St. Paul Fire & Marine Ins. Co.</u>, 238 F.R.D. 418, 422 (N.D.W. Va. 2006) ("Gamesmanship to evade answering [discovery requests] is not allowed.").

In that regard, Rule 26(g) requires that

> every discovery request, response, or objection . . . be signed by at least one attorney of record in the attorney's own name — or by the party personally, if unrepresented — and must state the signer's address,

16

e-mail address, and telephone number. By signing, an attorney or party certifies that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry:
(A) with respect to a disclosure, it is complete and correct as of the time it is made; and
(B) with respect to a discovery request, response, or objection, it is:
    (i) consistent with these rules and warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law, or for establishing new law;
    (ii) not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; and
    (iii) neither unreasonable nor unduly burdensome or expensive, considering the needs of the case, prior discovery in the case, the amount in controversy, and the importance of the issues at stake in the action.

Fed. R. Civ. P. 26(g)(1).

The certification requirement in Rule 26(g) thus "obliges each attorney to stop and think about the legitimacy of a discovery request, a response thereto, or an objection." . . . By signing a Rule 26(g) certification, an attorney "certifies that [he or she] has made a reasonable effort to assure that the client has provided all the information and documents available to [the client] that are responsive to the discovery demand."

Kinetic Concepts, 268 F.R.D. at 242 (quoting Fed. R. Civ. P. 26

advisory committee's notes, 1983 Amendment, Subdivision (g)).

If a certification violates this rule without substantial justification, the [C]ourt, on motion or on its own, must impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both. The sanction may include an order to pay the reasonable expenses, including attorney's fees, caused by the violation.

Fed. R. Civ. P. 26(g)(3).

17

## E. Motions to Compel

As a general proposition, "[a]ll motions [must] state with particularity the grounds therefor." M.D.N.C. LR 7.3(b). Additionally, this Court's Local Rules provide for response briefs and limit reply briefs "to discussion of matters newly raised in the response," M.D.N.C. LR 7.3(h). Consistent with such requirements, "[p]arties cannot advance new arguments for the first time in a reply brief." TD Bank, N.A. v. Jay Jala Bapa, L.L.C., No. 1:16cv823, 2018 WL 456208, at *8 n.12 (M.D.N.C. Jan. 17, 2018) (unpublished).

Although Rule 26 allocates "primary responsibility for conducting discovery" to litigants, Fed. R. Civ. P. 26 advisory committee's notes, 1983 Amendment, Subdivision (g), it likewise "acknowledges the reality that [the discovery process] cannot always operate on a self-regulating basis," Fed. R. Civ. P. 26 advisory committee's notes, 1983 Amendment, Subdivision (b). "The Rules thus afford a number of mechanisms for litigants to seek judicial intervention in discovery disputes, including authorizing '[a] party seeking discovery [to] move for an order compelling an answer, designation, production, or inspection.'" Kinetic Concepts, 268 F.R.D. at 243 (quoting Fed. R. Civ. P. 37(a)(3)(B)). Rule 37 allows such a motion when "a party fails to answer an interrogatory submitted under Rule 33," Fed. R. Civ. P. 37(a)(3)(B)(iii), or when "a party fails to produce

18

documents . . . as requested under Rule 34," Fed. R. Civ. P. 37(a)(3)(B)(iv). "[A]n evasive or incomplete . . . answer[] or response must be treated as a failure to . . . answer[] or respond." Fed. R. Civ. P. 37(a)(4).

Moreover, motions under Rule 37 "must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1). By Local Rule, the Court will "consider motions and objections relating to discovery" only if "moving counsel files a certificate that after personal consultation and diligent attempts to resolve differences the parties are unable to reach an accord. The certificate shall set forth the date of the conference, the names of the participating attorneys, and the specific results achieved." M.D.N.C. LR 37.1(a). Finally, the party opposing discovery generally bears the burden on a motion to compel. Kinetic Concepts, 268 F.R.D. at 243-44 (collecting cases).

### F. Expense-Shifting and Other Sanctions

Upon granting a motion to compel, or "if the . . . requested discovery is provided after the motion was filed[,] the [C]ourt must, after giving an opportunity to be heard, require the party . . . whose conduct necessitated the motion, the . . . attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including

19

attorney's fees." Fed. R. Civ. P. 37(a)(5)(A). Only three exceptions apply to the foregoing mandate: "(i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust." Id. Likewise, if the Court denies the motion, the

> [C]ourt must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party . . . who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees. But the court must not order this payment if the motion was substantially justified or other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(a)(5)(B). Upon granting such motion in part and denying it in part, "the [C]ourt . . . may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion." Fed. R. Civ. P. 37(a)(5)(C).

Rule 37 further authorizes sanctions when a party, without notice, "withhold[s] materials otherwise subject to disclosure under . . . [R]ule [26] or pursuant to a discovery request." Fed. R. Civ. P. 26 advisory committee's notes, 1993 Amendment, Subdivision (b)(5); see also Johnson v. Ford Motor Co., 309 F.R.D. 226, 235-36 (S.D.W. Va. 2015) ("[A]n award of Rule 37(b)(2) sanctions for failing to comply with Rule 26(b)(5)(A) is most appropriate when (1) documents have been withheld without any notice or privilege log; (2) a party has been ordered by the court to correct an inadequate privilege log and fails to comply with the

20

order; or (3) the circumstances surrounding the production of an insufficient privilege log are particularly troubling or egregious and thus merit an award of sanctions beyond the reasonable fees and costs allowed under Fed. R. Civ. P. 37(a)(5)(A).").

Another subsection of Rule 37 provides for sanctions for violations of Rule 26(e), to include an "order [requiring] payment of the reasonable expenses, including attorney's fees, caused by the failure [to supplement in a timely manner]," Fed. R. Civ. P. 37(c)(1)(A). Beyond expense-shifting, that subsection authorizes a court to "impose other appropriate sanctions," Fed. R. Civ. P. 37(c)(1)(C), including

> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
> (iii) striking pleadings in whole or in part;
> (iv) staying further proceedings until the order is obeyed;
> (v) dismissing the action or proceeding in whole or in part; [and]
> (vi) rendering a default judgment against the disobedient party . . . .

Fed. R. Civ. P. 37(b)(2)(A)(i)-(vi); see also Fed. R. Civ. P. 37(c)(1)(C) (approving of "any of the orders listed in Rule 37(b)(2)(A)(i)-(vi)")).

In deciding what Rule 37 sanctions to impose, "[t]he [C]ourt must determine (1) whether the non-complying party acted in bad faith, (2) the amount of prejudice that noncompliance caused the adversary, (3) the need for deterrence of the particular sort of

21

non-compliance, and (4) whether less drastic sanctions would have been effective." <u>Anderson v. Foundation for Advancement</u>, 155 F.3d 500, 504 (4th Cir. 1998).

## **II. Analysis**

### **A. Preliminary Statement and General Objections**

The following "preliminary statement" precedes CRA's Answers to Interrogatories and Responses to Document Requests:

> Plaintiff[] ha[s] failed to provide sufficient evidence that any [CRA] product(s) caused any of [Decedent]'s injuries. As such, the[ I]nterrogatories are overbroad, unduly burdensome, and request irrelevant information not reasonably calculated to lead to the discovery of admissible evidence in that they seek information unrelated to [CRA]'s alleged liability. Additionally, [the I]nterrogatories improperly purport to shift the burden of proof from Plaintiff[] to [CRA]. Furthermore, the [I]nterrogatories unreasonably and unjustifiably call upon [CRA] to engage in a historical review of its entire corporate history, product history, sales history, and contract history. Such discovery is not envisioned by the [] Rules . . . and permitting Plaintiffs to conduct such a discovery search would constitute a violation of [CRA]'s rights to due process. [The I]nterrogatories should be limited to [Decedent]'s places of employment and corresponding time periods, and further, should identify the [CRA] product(s) to which Plaintiff[ is] claiming exposure so that [CRA] can search for relevant information to the extent it is in [CRA]'s possession. [CRA] objects to the[ I]nterrogatories as Plaintiff[] ha[s] not provided sufficient information for [CRA] to conduct a reasonable investigation and to the extent they go beyond [Decedent]'s alleged exposure.

> [CRA] has had thousands of employees over the years. In conducting business, [CRA] has created millions of documents that have been kept in numerous geographic locations and moved as required in the normal course of business. Significant time has elapsed since the events inquired about in the[ I]nterrogatories. As a result, many knowledgeable people have left [CRA]'s employ and cannot be located or are deceased. Many documents have

22

long since been discarded, lost, or otherwise have become
unavailable through the ordinary course of business.
Accordingly, the information available to [CRA] regarding
these historical matters is incomplete and may remain
incomplete despite continuing efforts to locate
knowledgeable persons and relevant documents. As such,
[CRA] does not represent that its responses provide all
of the information requested. Rather, [CRA]'s responses
will reflect information obtained pursuant to a
reasonable and diligent investigation in those areas
where information is expected to be found. If any
request purports to require more, [CRA] objects on the
grounds that compliance with such a request is not
reasonable and imposes an undue burden and expense upon
[CRA].

Responses were compiled based upon a reasonable inquiry
of those persons who might be reasonably expected to
possess responsive information. Responses were also
prepared based on examination of those files and records
reasonably available to [CRA], and which might reasonably
be expected to contain responsive documents or
information relating to the claims at issue, subject to
the objections and limitations set forth herein. [CRA]
states affirmatively that its responses are based on
documents, records, or information in the possession,
custody or control of [CRA], its agents, employees and
representatives only. No single officer, employee, or
agent of [CRA] has direct knowledge of all of the facts
necessary to supply these responses.

Because [CRA]'s investigation into the matters herein is
continuing, its responses are based only on such
information as of the date of these responses. [CRA],
therefore, reserves the right to supplement these
responses based on any subsequently discovered facts.

(Docket Entry 156-4 at 2-4; Docket Entry 156-5 at 2-4 (same preface

in Responses to Document Requests).) CRA then lodged the following

"general objections":

1. [CRA] objects to the Interrogatories to the extent
they purport to impose obligations beyond those permitted
under the [] Rules . . . and this [Court]'s Local Rules.

2. [CRA] objects to the Interrogatories to the extent
they seek information protected by the attorney-client

23

privilege, the joint defense privilege, the common interest privilege, the attorney work product doctrine, or any other applicable privilege or protection.

3. [CRA] objects to the Interrogatories to the extent they are ambiguous, vague, or unreasonably require [CRA] to speculate as to the nature or scope of the information sought, or are otherwise incomprehensible.

4. [CRA] objects to the Interrogatories as overbroad and not reasonably likely to lead to the discovery of admissible evidence to the extent they are based on the unfounded premise that brake work on Great Dane trailers has been or could be the cause of any asbestos-related disease.

5. None of these objections or responses is an admission as to (a) the existence of any documents or information; (b) [CRA]'s possession, custody or control of any documents or information; (c) the relevance or admissibility of any documents or information; or (d) the truth or accuracy of any statement or characterization contained in the Interrogatories.

6. Reserving its right to supplement these responses as its investigation continues and as discovery in this matter proceeds, [CRA] specifically incorporates its preliminary statement and each of these general objections into each response below.

(Docket Entry 156-4 at 4-5; see also Docket Entry 156-5 at 4-5 (same objections in Responses to Document Requests).)

Plaintiff has requested an order directing "CRA to remove its preliminary statement and general objections from its discovery responses." (Docket Entry 156 at 13.) For its part, CRA has characterized its general objections as "limited" but otherwise failed to respond to Plaintiff's argument (See Docket Entry 160 at 3.)

As explained above, when objecting to discovery requests, litigants must state such objections "with specificity." Fed. R.

24

Civ. P. 33(b)(4); Fed. R. Civ. P. 34(b)(2)(B). Here, "[CRA] prefaces its responses with a litany of general, boilerplate objections 'to the extent' they apply to Plaintiff[']s[] discovery requests . . . [and] then incorporates those objections into its responses," Patrick, 297 F.R.D. at 256. (See, e.g., Docket Entry 156-4 at 5 (incorporating preliminary statement and general objections into each response).) Moreover, the preliminary statement and general objections offer no "particularized showing of how they apply to the individual [I]nterrogatory or [Document ]Request . . . to which [CRA] is objecting." Patrick, 297 F.R.D. at 256. Also, in violation of Rule 34, CRA has failed to indicate whether it withheld responsive documents on the basis of the preliminary statement or general objections. It bears repeating that general or "boilerplate" objections lack validity. See Kinetic Concepts, 268 F.R.D. at 241. Although some portions of the preliminary statement qualify as impermissible boilerplate objections, others do not; for example, part of the preliminary statement references the steps CRA took to respond to Plaintiff's discovery requests. (See Docket Entry 156-4 at 3-4.)

In light of the foregoing, Plaintiff correctly has identified certain defects in the general objections and parts of the preliminary statement. However, she has cited no authority empowering the Court to strike such material. (See Docket Entry 156 at 1-17.) Notably, the Rules authorize the Court to strike pleadings, Fed. R. Civ. P. 37(b)(2)(A)(iii), but responses to

25

discovery requests fail to qualify as such, <u>see</u> Fed. R. Civ. P. 7 (defining pleadings). "To be sure, this Court is not bound by [such] statement[s], and [they] cannot work to limit [CRA]'s responsibilities under the discovery rules; so, there is little appreciable reason for [them] to be struck," <u>Norton v. Knapheide Equip. Co.</u>, No. 4:18-cv-1615, 2019 WL 3082631, at *1 (E.D. Mo. July 15, 2019) (unpublished). "If [CRA] ha[s] withheld any documents or failed to answer an interrogatory solely in reliance on a general objection — and they should tell [P]laintiff whether they have done so — [it] will have to produce the withheld documents or answer the interrogatory or interrogatories," <u>Flava Works, Inc. v. Gunter</u>, No. 10C6517, 2013 WL 5770558, at *1 (N.D. Ill. Oct. 24, 2013) (unpublished). Accordingly, the Court denies Plaintiff's request to strike the preliminary statement and general objections, but it will order CRA to supplement its discovery responses to the extent CRA previously withheld responsive information solely on the basis of its general objections (or those asserted in the preliminary statement).

## B. Interrogatories

In the Interrogatories, a "general definitions" section defines the term "Premises at Issue" as follows:

- Mack Trucks (1960-1962), Richmond, VA;
- Great Coastal (1962-1964), Richmond, VA;
- Archie's Motor Freight (1964-1972), Richmond, VA;
- Adley/Yellow Freight (1971-1979), Richmond, VA;
- Yellow Freight (1979-2002), Charlotte, NC.

26

(See Docket Entry 160-1 at 7; see also Docket Entry 156-3 at 3
(cross-referencing Document Requests for definitions).) Plaintiff
has clarified that such definition "list[s] the locations where
[Decedent] worked and the relevant timeframe he was at each
location" (Docket Entry 156 at 2). As pertinent here, in June
2020, the parties engaged in the following exchange:

> 23. Describe in detail what brakes, clutches, engines,
> automotive gaskets, brake linings, or any other
> tractor-trailer/trailer part product(s) [CRA] sold to any
> of [Decedent]'s Employers/Premises at Issue, or to any
> co-defendant in this case. Include in [CRA]'s answer: a
> description of the products; what quantity of sales were
> completed for each year they were made; what type of
> asbestos fibers they contained and what percentage by
> weight was made of asbestos; and a description of the
> packaging.
>
> ANSWER: [CRA] objects to the premise that it was a
> manufacturer, supplier or seller of asbestos. [CRA]
> objects to this interrogatory on the grounds that it is
> vague, argumentative, and seeks irrelevant information
> not reasonably calculated to lead to the discovery of
> admissible evidence in that it is not limited to any time
> periods, products, or subject matters at issue in this
> case. [CRA] further objects on the grounds that this
> interrogatory assumes facts not in evidence. Subject to
> and without waiving the foregoing objections, after
> reasonable investigation, [CRA] is not presently aware of
> any part product sales it may have made to any of the
> "Premises at Issue" during the indicated periods.

(Docket Entry 156-4, ¶ 23.)

During CRA's (subsequent) Rule 30(b)(6) deposition, Carter
acknowledged that (i) the Sales Index allowed him to
"cross-reference the [Premises at Issue to] figure out which order
number microfiche to pull and examine" (Docket Entry 162-1 at 8),
(ii) the Sales Index remains searchable (id. at 9), and (iii) it

27

"probably" took Carter "[a] matter of minutes" to locate two of Decedent's employers on the Sales Index (id.). When Plaintiff's Counsel asked Carter about the timing of the search for records that preceded the First January Production, Carter testified that he first consulted the Sales Index "in the middle of 2020" (id. at 14) and that he obtained records relating to the Premises at Issue "sometime later in the summertime [or] early fall" of that year (id.). However, he could not confirm that "even a minute was spent . . . looking either at th[e Sales Index] or microfilm about sales to the [P]remises at [I]ssue" before CRA issued its Responses to Document Requests in June 2020. (Id. at 42.) Moreover, Carter stated that he "believe[d]" he made CRA's Counsel aware of documents indicating sales by CRA to the Premises at Issue, without clarifying when such conversation took place. (Id. at 43.)

As mentioned earlier, CRA supplemented its discovery responses on February 18, 2021, to reflect the records CRA had produced to Plaintiff in January 2021. (See Docket Entry 160-2, ¶ 23 (referencing Carter's deposition testimony and CRA's supplemented answer to Interrogatory 7); see also id., ¶ 7 (describing the First January Production and the Second January Production).)

Plaintiff generally has challenged CRA's "form objections" (see Docket Entry 156 at 11), contending that the Court should strike them (id. at 17) and require CRA to provide "fully responsive answers" (id. at 11). Notwithstanding that broad request, the First Memorandum discusses only CRA's answer to

28

Interrogatory 23, particularly the fact that CRA, "<u>after reasonable investigation</u>," denied knowledge of "part product sales" between CRA and Decedent's employers. (<u>See</u> Docket Entry 156 at 5 quoting (Docket Entry 156-4, ¶ 23 (emphasis added)).) In the First Response, CRA has declined to address the particulars of Interrogatory 23 (<u>see</u> Docket Entry 160 at 1–15) but has maintained that it "specifically objected and responded, as appropriate, to each individual request" (<u>id.</u> at 3). Perhaps in response to that assertion, the First Reply identifies seven additional Interrogatories to which, according to Plaintiff, CRA offered "inappropriate objections and evasive answers" (Docket Entry 163 at 9). (<u>See</u> <u>id.</u> at 10-11 (discussing Interrogatories 10, 11, 12, 18, 28, 29, and 30).)

With respect to Interrogatory 23, CRA failed to state "[t]he grounds for objecting . . . with specificity," Fed. R. Civ. P. 33(b)(4). CRA's answer nowhere specifies how Interrogatory 23 qualifies as vague or argumentative or how it seeks irrelevant information. (<u>See</u> Docket Entry 156-4, ¶ 23.) Additionally, in connection with CRA's Answers to Interrogatories, Carter swore under oath that CRA lacked knowledge after conducting a "reasonable investigation." (<u>Id.</u>; <u>see also</u> <u>id.</u> at 18.) Perhaps even more troubling, "the signature [by CRA's Counsel]" on that document "certifies that [he] has made a reasonable effort to assure that [CRA] has provided all the information and documents available to [it] that are responsive to the discovery demand," Fed. R. Civ. P.

29

26 advisory committee's notes, 1983 Amendment, Subdivision (g). (See Docket Entry 156-4 at 19.)

Notwithstanding those serious shortcomings, CRA's supplementation moots Plaintiff's request to compel as to Interrogatory 23. Although CRA initially objected on several boilerplate grounds, the Supplemental Answers to Interrogatories identify numerous part product sales, the records of which CRA provided in connection with related Document Requests in January 2021. The First Reply suggests no inadequacy in the substance of CRA's supplementation. As a result, the Court deems the First Motion moot to the extent it requests an order compelling production as to Interrogatory 23. Because the adequacy of CRA's initial response and the timing of its supplementation may bear on expense-shifting, the Court further addresses that topic in Subsection E below.[5]

---

[5] As noted above, the First Reply identifies, for the first time, seven additional Interrogatories that Plaintiff seeks to compel CRA to answer but does not indicate whether the parties engaged in "personal consultation and diligent attempts to resolve differences," M.D.N.C. LR 37.1(a), as required by this Court's Local Rules, concerning those Interrogatories. (See Docket Entry 163.) The attached exhibits demonstrate no correspondence about such topics. (See Docket Entries 156-9, 156-10, 156-11, 156-17, 156-18, 156-19, 156-20, 156-21.) Moreover, because Plaintiff augmented (or at least clarified) her request for relief in the First Reply (rather than in the First Motion, as required by this Court's Local Rule 7.3(a)), CRA lacked an opportunity to respond. For those reasons, Court declines to address Plaintiff's requests for relief as to Interrogatories 10, 11, 12, 18, 28, 29, and 30.

## C. Document Requests

Like the Interrogatories, the Document Requests sought information concerning the "Premises at Issue" (Docket Entry 160-1 at 7). Of particular note, Plaintiff asked CRA to "produce all documents evidencing in any way sales of [CRA]'s products to the Premises at Issue." (Id., ¶ 6.) CRA then responded:

> RESPONSE: [CRA] objects to this Request on the grounds that it is vague, overbroad, unduly burdensome and seeks irrelevant information not reasonably calculated to lead to the discovery of admissible evidence in that it is not limited to any time periods, products, or subject matters at issue in this case. Subject to and without waiving the foregoing objections, subject to [CRA]'s ongoing investigation, [CRA] is not presently aware of any responsive documents.

(Docket Entry 156-5, ¶ 6.) Plaintiff also requested "documentation relating to the presence of [CRA]'s brakes, clutches, engines, automotive gaskets, brake linings, or any other tractor-trailer automotive part(s) on the particular jobsites where [Decedent] worked, including the Premises at Issue." (Docket Entry 160-1, ¶ 11.)[6] As to that request, CRA gave this response:

> RESPONSE: [CRA] objects to this Request on the grounds that it is overbroad and unduly burdensome in that it is not limited to any time periods, products or subject matters at issue in this case. [CRA] objects on the

_____

6 Plaintiff appears to have duplicated that request, insofar as Document Request 14 states: "Please provide any and all documentation relating to the presence of [CRA]'s brakes, clutches, engines, automotive gaskets, brake linings, or any other tractor-trailer automotive part(s) at any jobsites where Plaintiff worked, including the Premises at Issue" (Docket Entry 160-1, ¶ 14). CRA provided identical responses to Document Requests 11 and 14. (Compare Docket Entry 156-5, ¶ 11, with id., ¶ 14.)

31

grounds that this Request assumes facts not in evidence.
Subject to and without waiving the foregoing objections,
[CRA] is not in possession of responsive materials.

(Docket Entry 156-5, ¶ 11.)

Plaintiff further sought "any and all writings pertaining to sales [CRA] made to any of the Premises at Issue during the relevant time periods listed." (Docket Entry 160-1, ¶ 26.) CRA answered:

RESPONSE: [CRA] objects to this Request on the grounds
that it is overbroad and unduly burdensome in that it is
not limited to any time periods, products, or subject
matters at issue in this case. [CRA] objects on the
grounds that this Request assumes facts not in evidence,
parties and products at issue in this case [sic].
Subject to and without waiving the foregoing objections,
subject to [CRA]'s ongoing investigation, [CRA] is not
presently aware of any responsive documents.

(Docket Entry 156-5, ¶ 26.) Finally, Plaintiff asked CRA to "produce all summaries and indexes of [its] documents." (Docket Entry 160-1, ¶ 47).[7] In response, CRA stated:

RESPONSE: [CRA] objects to the extent this Request seeks
information protected by the attorney-client privilege,
the attorney work[-]product doctrine or information
prepared in anticipation of litigation. Subject to and
without waiving the foregoing objections, [CRA] is not in
possession of any non-privileged, responsive materials.

(Docket Entry 156-5, ¶ 47.)

In the First Motion, Plaintiff has highlighted her request in May 2020 for "documents evidencing sales to th[e Premises at

_____

7 Although Plaintiff has not cited Document Request 47 in the
Motions (see Docket Entry 156 at 1-17; Docket Entry 162 at 1-17),
the Court reads such request to encompass materials like the Sales
Index, a document that Plaintiff elsewhere has argued CRA must
produce.

32

Issue], [CRA's response in June 2020 that] it was not aware of any responsive documents" (Docket Entry 156 at 4-5 (excerpting Document Requests 6, 11, 14, and 26 and corresponding responses from CRA), and CRA's ultimate production of hundreds of pages of documents in January 2021 (see id. at 6-7). CRA has acknowledged that delay but maintained that "CRA's response to Plaintiff's discovery requests has been reasonable and responsive under the circumstances" (Docket Entry 160 at 11). (See also id. at 3-9 (describing CRA's initial responses, Carter's deposition, and supplemental production).)

Plaintiff has identified several problems with CRA's Responses to Document Requests. First, CRA did not "state with specificity the grounds for objecting to [Plaintiff's Document R]equest[s], including the reasons." Fed. R. Civ. P. 34(b)(2)(B). For example, CRA contended that Document Requests 6, 11, 14, and 26 presented an "undu[e] burden[]" and that such requests failed to specify "time periods, products, or subject matters at issue." (Docket Entry 156-5, ¶ 6.) However, CRA provided no support for the former assertion, and the latter statement ignores (i) Plaintiff's time-limited definition of the Premises at Issue and (ii) Document Requests that reference particular types of products. (See Docket Entry 160-1, ¶ 11.) Accordingly, some of CRA's objections qualify as invalid boilerplate recitations, similar to CRA's general objections (and some aspects of its preliminary statement).

Second, to the extent CRA substantively responded to the Document Requests in June 2020, some of its statements appear

33

inaccurate, incomplete, or evasive. In particular, CRA denied possession of responsive documents (see Docket Entry 156-5, ¶¶ 6, 11, 14, 26), in some cases qualifying such denial with reference to an "ongoing investigation" (id., ¶¶ 6, 26). However, Carter admitted during the Rule 30(b)(6) deposition that he knew about the Sales Index well before June 2020 and that, around that time, he used the Sales Index to locate records potentially responsive to Plaintiff's Document Requests. On the one hand, insofar as Carter's inquiry via the Sales Index constitutes "ongoing investigation," CRA's responses may fall short of blatant misrepresentation; on the other hand, such investigation suggests that CRA, in June 2020, knowingly possessed but declined to disclose responsive documents. Even if CRA's Counsel lacked actual knowledge of such documents, his signature on CRA's Responses to Document Requests "certifie[d] that [he] made a reasonable effort to assure that [CRA] provided all the information and documents available to [it] that are responsive to the discovery demand," Fed. R. Civ. P. 26 advisory committee's notes, 1983 Amendment, Subdivision (g). (See Docket Entry 156-5 at 29.)

Finally, Rule 34 obligated CRA to produce responsive documents "no later than the time for inspection specified in the [Document R]equest or another reasonable time specified in the [R]esponse[s to Document Requests]," Fed. R. Civ. P. 34(b)(2)(B). Although neither Plaintiff nor CRA specified when production would occur, the Rules do not countenance the indefinite possibility of later

34

production.  Even assuming Carter located responsive documents in late summer or early fall 2020, after CRA tendered its Responses to Document Requests, CRA waited until late January 2021 to produce them to Plaintiff.  That delay raises the question whether CRA supplemented its previous discovery responses "in a timely manner," Fed. R. Civ. P. 26(e).[8]  The Court addresses that topic, to the extent it bears on the appropriateness of expense-shifting and other sanctions, in Subsection E.

### Sales Index

Apart from Plaintiff's dissatisfaction with the completeness of CRA's Responses to Document Requests and the timing of its supplemental production, CRA's refusal to produce the Sales Index led to another disagreement between the parties.  More specifically, during the Rule 30(b)(6) deposition, Carter detailed the origins of the Sales Index, explaining that "one of the outside law firms that [CRA] use[s] hired an intern to . . . look at each microfiche document, pull it up, and create[] a spreadsheet of the order number, the customer name, the dealer or branch that it was sold out of, and the date of the order number."  (Docket Entry 162-1 at 9.)  As explained above, CRA invoked the work-product doctrine

_____

8    Although Plaintiff has highlighted CRA's delay in officially correcting its discovery responses, "supplementation or correction is not required if the added information has been made known to the other parties during the discovery process or in writing."  8A Charles Alan Wright, et al., Federal Practice and Procedure § 2049.1 (3d ed. 2010).  CRA "made known . . . the added information" (id.) by the end of January 2021.

35

after Plaintiff sought to obtain the Sales Index (see id. at 11), and subsequent correspondence reflects CRA's adherence to the view that such doctrine protects the Sales Index from disclosure (see Docket Entry 162-3 at 2).

Via the Second Motion, Plaintiff has requested an order compelling the production of CRA's Sales Index, "a word-searchable list in CRA's possession that contains CRA's order number or 'shop order' documents for sales since the company first began to retain its sales records" (Docket Entry 162 at 4). CRA has refused, continuing to assert "attorney work product" protection and stating that "CRA has now produced all available records from which all potentially responsive information from [the Sales Index] was generated, as well as all potentially responsive information on the [Sales Index] itself" (Docket Entry 172 at 5). CRA also has argued that Plaintiff failed to demonstrate a substantial need sufficient to justify disclosure of work product. (See id. at 14–18.) In the Second Reply, Plaintiff has maintained that (i) the work-product doctrine remains inapplicable (Docket Entry 174 at 8–9), (ii) "CRA . . . failed to produce a privilege log identifying the [Sales] Index" (id. at 7), (iii) CRA has attempted to use the Sales Index as "both a sword and shield" (id. at 8), and (iv) Plaintiff possesses a substantial need for the Sales Index (id. at 9–10).

Here, CRA has failed to carry its burden to show that the work-product doctrine applies to the Sales Index. Although Carter testified that an intern produced the Sales Index at the direction

36

of one of CRA's legal representatives (see Docket Entry 162-1 at 9), he never stated whether "the prospect of litigation" based on "an actual claim or a potential claim following an actual event or series of events," National Union Fire Ins., 967 F.2d at 984, led to the creation of the document.[9]  Insofar as CRA has suggested in its briefing that CRA produced the Sales Index "in connection with prior asbestos litigation" (Docket Entry 172 at 4), Carter did not testify to that effect, and "[a]rgument of counsel is not evidence," Morrissey v. William Morrow & Co., 739 F.2d 962, 967 (4th Cir. 1984).  To the contrary, nothing in the record "establish[es] an evidentiary basis - by affidavit, deposition transcript, or other evidence - for each element of each privilege/protection claimed for [the Sales Index]," Sky Angel U.S., 28 F. Supp. 3d at 483.

In any event, CRA's invocation of the work-product doctrine failed to comply with Rule 26.  More specifically, CRA merely asserted that the work-product doctrine (as well as attorney-client privilege and "information prepared in anticipation of litigation") protected from disclosure any summary or index of CRA documents (see Docket Entry 156-5, ¶ 47) but neglected to provide any

---

    9  When Plaintiff's Counsel asked Carter whether he "kn[e]w when th[e Sales Index] was created or why [it] was created" (Docket Entry 162-1 at 9 (emphasis added)), Carter responded: "I cannot remember exactly when the [Sales Index] was created.  I'm trying to -- I don't know.  I would be guessing.  I would say at least ten years ago" (id.).  The rest of his testimony does not explain the reason for creating the Sales Index.  (See id. at 4-69.)

"descri[ption of] the nature of the documents . . . not produced,"
Fed. R. Civ. P. 26(b)(5)(A).  That failure prevented Plaintiff from
"assess[ing] the claim [of privilege]," id.; moreover, Plaintiff
has argued that CRA produced no privilege log (see Docket Entry 156
at 15; Docket Entry 174 at 7), and CRA has declined to respond to
that contention (see Docket Entry 160 at 1–15; Docket Entry 172 at
1–24).  As already explained, "the withholding of such a privilege
log may subject a party to sanctions under Rule 37(b)(2) and may be
viewed by the court as a waiver of any privilege or protection."
Banks v. Office of the Senate Sergeant-At-Arms & Doorkeeper, 222
F.R.D. 7, 20 (D.D.C. 2004).  For the foregoing reasons, the Court
directs CRA to supplement its response to Document Request ¶ 47 by
providing the Sales Index to Plaintiff.

### D. Rule 30(b)(6) Deposition

    1. Preparation of CRA's Witness

Among the 43 topics for CRA's deposition, the Notice included
the following:

> "[CRA's] knowledge . . . about the potential hazards
> associated with inhaling asbestos, including how [CRA]
> became aware that asbestos was a potential hazard to
> human health" (Docket Entry 156-6, ¶ 4 ("Topic 4");
>
> "[a]ll warnings ever provided by [CRA] to other parties
> relative to asbestos at any time and the method for
> communicating those warnings" (id., ¶ 8 ("Topic 8"));
>
> "any and all tractor-trailers, trailers, brakes,
> clutches, gaskets and/or any other asbestos-containing
> material/product sold, distributed, supplied, or provided
> to the Premises at Issue . . . during the timeframe
> specified for each Premise" (id., ¶ 22 ("Topic
> 22")(all-caps font omitted));

"[a]ny files, documents, contracts, purchase orders, invoices, or work orders with the Premises at Issue . . . during the timeframe specified for each Premise" (id., ¶ 23 ("Topic 23") (all-caps font omitted));

"[CRA]'s contracts and/or relationships with the Premises at Issue and locations [Decedent] worked at" (id., ¶ 31 ("Topic 31") (all-caps font omitted)); and

"[a]ny records, contracts, correspondence, purchase orders, invoices, master service agreements, or other written record between [CRA] and [Decedent]'s Employers and/or Premises at Issue prior to 2003" (id., ¶ 32 ("Topic 32") (all-caps font omitted)).

In response, CRA asserted the following general objections:

1. CRA objects to the Notice to the extent that its definitions are ambiguous, vague, unduly burdensome, harassing, overly broad, and/or impose any burden beyond the discovery obligations of the [] Rules . . . .

2. CRA objects generally to [the] Notice to the extent that it requests information about entities other than CRA, the party in this lawsuit.

3. CRA objects to [the] Notice to the extent that it is not reasonably framed in terms of the facts and subject matter of the present action, with the result that CRA is called upon to speculate as to what information relevant to the present case, if any, may be deemed to fall within the scope of the Notice. In addition, CRA objects to the Notice to the extent that it seeks information relating to times, events, and worksites far beyond the subject matter of this lawsuit, as well as products and activities of CRA with no relationship whatsoever to asbestos litigation, let alone to this matter, and to the extent that the Notice seeks information not relevant to any matter at issue in this litigation.

4. CRA objects to [the] Notice and the forty-three (43) separate topics contained therein on the grounds that it is overly broad, vague, repetitive, unduly burdensome, oppressive, harassing, contains numerous terms that are vague and ambiguous, is insufficiently limited in time, scope, place, and is not reasonably calculated to lead to the discovery of admissible evidence.

39

5. CRA objects to [the] Notice on the grounds that it is duplicative, oppressive, costly, and unduly burdensome in that CRA's person most knowledgeable has been deposed previously by Plaintiff's [C]ounsel on these very issues. Transcripts of such testimony as a substitute for the deposition can be made available to Plaintiff.

6. CRA objects to [the] Notice to the extent it purports to seek information or materials that have been gathered, received, or prepared in the course of or anticipation of litigation, or which are otherwise subject to the attorney-client privilege, the work-product privilege, or any other applicable privilege.

7. CRA objects to the Notice to the extent that it seeks information contained in documents that have been previously produced to Plaintiff's [C]ounsel.

8. CRA objects to the Notice to the extent it calls for information about CRA employees or premises or policies pertaining to CRA employees or premises that are unrelated to the claims in this litigation on the grounds that such requests are overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

9. CRA objects to the Notice to the extent it calls for information not within the personal knowledge, possession or control of CRA, its employees, or agents.

10. CRA objects to providing information about any of its products other than the products at issue in this case. Any request for documents or information relating to any CRA products other than products at issue in this case is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

11. CRA reserves the right to supplement these Responses and Objections to include additional objections to the Notice, and/or file a Motion for Protective Order should it be necessary to do so.

(Docket Entry 156-12 at 2-4.) As concerns each topic in the Notice, CRA incorporated its general objections. (See id., ¶¶ 1-43.) In response to certain topics excerpted above, CRA

40

further stated that such "topic [wa]s overly broad, burdensome, vague, assume[d] facts, and not limited to products, time periods or disease at issue" (id., ¶ 4). (See id., ¶ 8 (lodging identical objections to Topic 8), ¶¶ 22-23 (stating similar objections to Topics 22 and 23), ¶¶ 31-32 (same, as to Topics 31 and 32).)

During CRA's deposition, Plaintiff's Counsel questioned Carter about his efforts to educate himself about the topics in the Notice. For example, she asked whether Carter had (i) "contact[ed] any dealer . . . to see what, if any, information they had about . . . sales to [Decedent's] workplaces" (Docket Entry 162-1 at 12), (ii) attempted to determine whether, at any point, CRA dealers exclusively sold CRA parts (id. at 12-13), (iii) "spoken to anyone in the company, whether a former employee or an existing employee to determine what, if any, relationship [CRA] had with [one of Decedent's employers]" (id. at 13), (iv) investigated how CRA employees conducted brake maintenance and whether employees used arc grinders (id. at 65), and (v) tried to learn whether CRA maintained "broader policies relating to asbestos" (id. at 66). After those inquiries, Carter testified that he had (i) not contacted dealers and instead relied on the sales records (id. at 12), (ii) not attempted to learn "what a dealer sells or does not sell" (id. at 13), (iii) not spoken to anyone about the relationship between CRA and Decedent's employers (id. at 13) (iv) not spent time trying to learn how CRA employees handled brake linings (id. at 65), and (v) not found a CRA policy concerning the

41

hazards of asbestos (despite "us[ing] the key word asbestos" in his searches) (id. at 66).

Plaintiff has expressed several complaints about CRA's deposition. (See Docket Entry 162 at 7-10.) In particular, Plaintiff has asserted that "CRA failed to search for past employees to determine if they have relevant knowledge to the [N]otice" (id. at 7 (emphasis omitted)), "to provide []the company's standard parts documents" (id. (emphasis omitted)), "to do an adequate search for its trailer product manuals" (id. at 8 (emphasis omitted)), "to adequately search for information regarding the company's position on the hazards of asbestos" (id. at 9 (emphasis omitted)), "to do a reasonable investigation for documents and individuals who worked at either its Richmond, VA or Charlotte, NC branches and dealerships" (id. at 10 (emphasis omitted)), and "to do a proper investigation for documents related to two of its major axles suppliers, Timken and Standard Forge" (id. (emphasis omitted)). CRA has described Carter's investigation before the deposition, referenced the supplemental production of documents, and noted that Plaintiff may question Carter further about such topics when the Rule 30(b)(6) deposition resumes. (See Docket Entry 172 at 19-22.)

To resolve the dispute on the foregoing subjects, the Court compares such topics to the Notice, as that document previewed for CRA what Plaintiff intended to explore during CRA's deposition and thus should have informed CRA's preparation for such deposition.

42

Upon review of the Notice and CRA's corresponding objections, the Court concludes that neither party fully complied with Rule 30(b)(6)'s requirements. More specifically, in some cases, Plaintiff failed to describe "with reasonable particularity the matters for examination" Fed. R. Civ. P. 30(b)(6). For example, even when limiting requests for information to Decedent's employers during the years he worked there, Plaintiff cannot reasonably have expected Carter to possess knowledge (personal or otherwise) about "any and all tractor-trailers, trailers, brakes, clutches, gaskets and/or any other asbestos-containing material/product [that CRA] sold, distributed, supplied, or provided" (Docket Entry 156-6, ¶ 22 (emphasis added)) to a jobsite over the course of four decades, dating back to the 1960s (id. at 4 (defining Premises at Issue)). For its part, CRA again lodged invalid general objections (see Docket Entry 156-12 at 2-4), incorporated such objections into every response (see id., ¶¶ 1-43), and, in some instances, asserted boilerplate objections without further explanation (see, e.g., id., ¶ 4 (objecting to Topic 4 on numerous grounds and providing, "[s]ubject to these objections, CRA's witness will be able to address in general terms CRA's knowledge of the hazards of asbestos so much as is relevant to the particular products, times, events, and disease at issue in this case")).

At bottom, Plaintiff identified numerous (and in some respects, impermissibly broad) topics in the Notice, CRA responded with (in some instances, invalid) objections, and Plaintiff

43

remained unsatisfied, after CRA's deposition, with CRA's inquiry into those topics (and resulting failure to produce relevant documents).[10]  Importantly, CRA has agreed to produce Carter for another deposition and has advised Plaintiff that Carter has conducted additional (unspecified) investigation.  (See Docket Entry 172 at 19-22.)  CRA also produced additional documents following CRA's deposition.  (See id. at 19-20 (referencing subsequent production on March 2, 2021, and March 4, 2021).)  Under those circumstances, the Court declines to order CRA to perform specific searches or tasks, as Plaintiff has requested, in connection with the deposition.  Instead, the Court will direct Plaintiff, in advance of the to-be-reconvened Rule 30(b)(6) deposition, to serve a notice that reflects the reasonably particularized, relevant information that Plaintiff continues to seek from CRA and will order the parties thereafter to timely "confer in good faith about the matters for examination," Fed. R. Civ. P. 30(b)(6).

### 2. Disclosure of Contact Information

When Plaintiff's Counsel inquired about CRA's history of trailer part sales, Carter testified that "[CRA] didn't sell a lot

_____

10  By way of further example, Plaintiff has challenged CRA's failure to provide "standard parts documents" or investigate documents related to two axle suppliers, but neither of those subjects appear in the Notice.  (See Docket Entry 156-6, ¶¶ 1-43.) Plaintiff has cited to the Notice only sparingly in explaining the supposed deficiencies with CRA's deposition.  (See Docket Entry 162 at 7-10.)

44

of brake parts over the counter" and identified retired CRA employee Carl Quante ("Quante") as the source of that information. (See Docket Entry 162-1 at 47.)  More specifically, Carter once asked Quante about "what [Quante] remembers as far as brake sales in [CRA's] parts department."  (Id.)  As far as employees who may have information about "issues regarding the use of asbestos brakes" (id. at 63), Carter recalled conversations with Ron Gordy ("Gordy"), "the [one-time] head of [CRA's] warranty . . . and customer service departments."  (Id. at 64.)  Carter also testified that he talked to retired employee Eddie Rappé ("Rappé"), who worked "over [CRA's] service departments."  (Id.)  However, Carter could remember few substantive details from those conversations. (See id. at 64–65.)

Plaintiff has challenged CRA's failure to "provide[] the contact information regarding the individuals [] Carter spoke with to prepare himself as the company's corporate representative." (Docket Entry 162 at 6.)  According to Plaintiff, she requested such information for purposes of obtaining a subpoena or scheduling a deposition.  (Id. at 7.)  In response, CRA has argued that, by email on March 6, 2021, CRA's Counsel advised Plaintiff's Counsel about the availability of Quante, Gordy, and Rappé.  (Docket Entry 172 at 6–7; see also Docket Entry 172-4 at 3 (providing Quante's telephone number and describing medical issues of Gordy and Rappé).)  Despite that communication (which occurred after the filing of the Second Motion), Plaintiff has maintained that she

45

still lacks contact information for Gordy and Rappé and has alternatively sought "their deposition availability within 15 days." (Docket Entry 174 at 1-2.)

The Rules provide several methods for litigants to obtain information about non-party individuals known by the litigant's opponent to possess relevant information. First, Rule 26 requires the disclosure of "the name and, if known, the address and telephone number of each individual likely to have discoverable information . . . that the disclosing party may use to support its claims or defenses . . . ." Fed. R. Civ. P. 26(a)(1)(A)(i). Alternatively, a party may use a written interrogatory or request for production of documents to identify knowledgeable individuals. See generally Fed. R. Civ. P. 33; Fed. R. Civ. P. 34. Here, Plaintiff has demanded the disclosure of Gordy and Rappé's contact information without demonstrating that she ever conveyed a proper request to CRA. (See Docket Entry 162 at 6-7 (explaining that Plaintiff sought contact information following CRA's deposition).) Additionally, she has cited no authority pursuant to which the Court may order such disclosure. (See id. at 13-14 ("Any and all information for individuals [] Carter talked to and relied on in his testimony should be provided to Plaintiff in order Plaintiff to get the true company knowledge it seeks." (emphasis added)).) As a result, the Court denies the Second Motion to the extent it requests an order compelling CRA to provide Plaintiff with Gordy and Rappé's contact information.

46

### 3. Disclosure of Net Worth

When Plaintiff issued the Notice for CRA's Rule 30(b)(6) deposition, she identified, as a topic for such deposition, "[t]he net worth of [CRA]" (Docket Entry 156-6, ¶ 17; accord id., ¶ 30 (referencing CRA's "net worth . . . and documents used . . . to refresh recollection and/or to prepare to testify to same")). In response, CRA "incorporate[d] its General Objections," stated that such "information would only be relevant to the issue of punitive damages," and indicated that "CRA [wa]s willing to work with Plaintiff to provide this information when and if it becomes relevant to the case." (Docket Entry 156-12, ¶ 17; accord id., ¶ 30.)

According to Plaintiff, "CRA has failed to provide any of its net worth information requested at its deposition." (Docket Entry 162 at 10.) Referencing its objection to the Notice, CRA has stated that "such request is unduly burdensome, harassing, overly broad, and/or imposes a burden upon CRA beyond the discovery obligations of the [] Rules . . . ." (Docket Entry 172 at 22.) CRA also has reiterated its "willing[ness] to work with Plaintiff to provide this information when and if [punitive damages] become[] relevant to the case." (Id.) Moreover, to justify its non-disclosure, CRA has argued that "[P]laintiff should make a prima facie showing of entitlement to punitive damages before [the Court] requir[es] the production of sensitive financial information." (Id. (citing United States Tobacco Coop. Inc. v. Big S. Wholesale

47

of Va., LLC, No. 5:13-CV-527, 2016 WL 10542366, at *3 (E.D.N.C. Mar. 7, 2016) (unpublished), and Blount v. Wake Elec. Membership Corp., 162 F.R.D. 102, 105 (E.D.N.C. 1993)).) In the Second Reply, Plaintiff appears to have modified her request for production, instead asking that CRA "identify what it has responsive to [net worth] and what it is willing to produce and prepare that information" (Docket Entry 174 at 6).

"[A] defendant's financial position is a proper consideration in assessing punitive damages." Stamathis v. Flying J, Inc., 389 F.3d 429, 442 (4th Cir. 2004). However, "the simple fact that [such] information is discoverable under Rule 26(a) does not mean that discovery must be had." Nicholas, 373 F.3d at 543. "A court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . forbidding the disclosure or discovery; . . . specifying . . . [the] time . . . for the disclosure or discovery; . . . [or] forbidding inquiry into certain matters . . . ." Moore v. DAN Holdings, Inc., No. 1:12CV503, 2013 WL 1833557, at *13 (M.D.N.C. Apr. 30, 2013) (unpublished) (quoting Fed. R. Civ. P. 26(c)(1) (some internal brackets omitted)). Given the potential for strategic behavior when a litigant seeks an opponent's sensitive financial information, "the mere inclusion of a bald demand for punitive damages in a pleading does not entitle a litigant to discovery of [such] information," id. at *14. Instead, some courts have required "a plaintiff [to] make some kind

48

of factual showing that a viable claim for punitive damages exists before allowing discovery of financial worth." <u>Blount</u>, 162 F.R.D. at 105.

Here, Plaintiff has made no such factual showing to support her request for CRA's net worth information. As far as relevance, the Operative Complaint alleges that CRA, along with numerous other Defendants, "acted in willful, wanton, gross negligence and in total disregard for the health and safety of [Decedent]" (Docket Entry 138, ¶ 87). According to the Operative Complaint, Defendants (including CRA)

> fail[ed] to warn prior users [of asbestos-containing products despite] knowledge of the need for monitoring due to prior exposure; . . . fail[ed] to issue recall type letters to prior users; . . . frustrat[ed] the publication of articles and literature from the 1930's through at least 1976; . . . reject[ed] . . . advice of corporate officials to warn of the hazards of their asbestos products [in order to protect] profits; [provided] intentional[ly] inadequa[te] . . . warnings . . . and delay[ed ]the use of[ such] warnings on asbestos products.

(<u>Id.</u>, ¶ 85.) However, the Operative Complaint includes no particularized allegations as to CRA's liability for punitive damages (<u>see</u> <u>id.</u>, ¶¶ 81-90), and Plaintiff's briefing on the Second Motion fails to show the present propriety of discovery concerning CRA's net worth (<u>see</u> Docket Entry 162 at 10-11; Docket Entry 174 at 6). Accordingly, the Court declines to order CRA to provide such information at this time.

**E. Expense-Shifting**

Plaintiff has sought attorney's fees and costs in connection with the Motions, as well as other "sanctions as the Court sees fit for CRA's willful and bad-faith withholding of documents" (Docket Entry 155 at 3). (See Docket Entry 156 at 15-17; Docket Entry 162 at 16-17.) In particular, Plaintiff has contended that CRA "[f]ail[ed] to meaningfully respond to the written discovery due on June 3, without any justification for the failure or effort to seek additional time if it was needed" (Docket Entry 156 at 11); "[r]epresent[ed] in written discovery [that] a 'reasonable search' was conducted regarding sales records when the company representative was unable to verify a 'minute' was dedicate[d] to a search before responding to discovery on June 3, 2020" (id. at 12); "[o]bject[ed, not in good faith] to Plaintiff's discovery request regarding sales records to the Premises at Issue, claiming the request was overly broad and unduly burdensome when the request was narrowed in location and time and the effort to obtain the requested information was relatively minimal, particularly given that the request is central to Plaintiff's evidence in a wrongful death case" (id.); "[f]ail[ed] to reasonably or timely supplement discovery after and when CRA knew its prior responses were wrong" (id.); "direct[ed] Plaintiff's [C]ounsel on January 4, 2021 to it[s] June 3, 2020 inaccurate written discovery responses" (id.); engaged in "[g]amesmanship in the timing of its [supplemental] productions . . . less than one business day before the [scheduled

50

Rule 30(b)(6)] deposition" (id.); and "[u]s[ed] the pandemic as an excuse not to produce documents known to [CRA] and its counsel months ago" (id.). Plaintiff has grounded the request for expense-shifting and other sanctions in Federal Rule of Civil Procedure 37(a). (See id. at 15-17; Docket Entry 162 at 15-16.)

According to CRA, the circumstances fail to warrant sanctions because "CRA is being responsive to Plaintiff's discovery requests, is making reasonable and appropriate efforts to identify potentially relevant information and documents, and is cooperating with Plaintiff" (Docket Entry 160 at 14). (See also Docket Entry 172 at 23 (opposing Second Motion's expense-shifting request on similar grounds).) In terms of "substantial justification" or circumstances that would render expense-shifting unjust, CRA has suggested that Plaintiff sought relief prematurely (because the parties have continued to meet and confer) (see Docket Entry 160 at 13-14) and that work restrictions related to the COVID-19 pandemic prevented CRA from obtaining the relevant documents during the summer of 2020 (see id. at 4-7).

In light of the foregoing discussion, the Court agrees with Plaintiff that, in some respects, CRA did not comply with its discovery obligations in ways that warrant Rule 37 sanctions. First, with respect to Interrogatory 23, CRA represented (under oath, and certified by CRA's Counsel) that it had conducted a "reasonable investigation" and lacked knowledge of any "part product sales" to Decedent's employers. (See Docket Entry 156-4,

51

¶ 23.) CRA's eventual deposition testimony and supplemental production undermined the former representation and contradicted the latter. Second, despite possessing the ability to use the Sales Index to locate potentially responsive documents, CRA waited several months (until the eve of its deposition, on two separate occasions) to produce such documents to Plaintiff. Although CRA partially cured that failure by providing the documents before the end of the discovery period, such conduct violates the timeliness requirement of Rule 26(e). Third, CRA initially failed to (i) disclose the existence of the Sales Index, (ii) create a privilege log, and (iii) indicate in its Responses to Document Requests that it had withheld documents on the basis of the work-product doctrine.

Aside from noting that the parties have attempted to resolve their disputes without court intervention and observing that COVID-19 frustrated CRA's access to certain documents at some point in 2020, CRA has failed to justify its delay in producing responsive documents and its noncompliance with Rules 26, 33, and 34. CRA's supplemental production and attempted cooperation have lessened the prejudice to some extent, but the above-mentioned failures cost Plaintiff additional time and expense, hindered preparation for the Rule 30(b)(6) deposition, and contributed to Plaintiff's request to reconvene such deposition. Even absent bad faith on CRA's part, its lack of reasonable diligence during discovery necessitated judicial intervention. Under the circumstances, the Court will

require that CRA pay a portion of Plaintiff's attorney's fees related to the Motions.

## CONCLUSION

Plaintiff has demonstrated that CRA (i) lodged improper general objections, (ii) asserted numerous other non-specific and unsupported objections, (iii) failed to conduct reasonable investigation and/or misrepresented its knowledge of "part product sales," (iv) improperly certified its discovery responses, and (v) delayed in producing responsive documents until just before CRA's deposition. Moreover, despite its invocation of the work-product doctrine to justify its refusal to produce the Sales Index, CRA neglected to follow the applicable Rules and failed to produce a privilege log as required.

As concerns the Rule 30(b)(6) deposition, however, the Court declines to order any relief, in light of the breadth of the Notice, CRA's subsequent production of documents, and the parties' agreement to conduct another Rule 30(b)(6) deposition. Furthermore, CRA need not disclose information relating to its net worth or contact information for Gordy and Rappé.

Finally, as a result of the decision to grant in part and deny in part the Motions, the Court will apportion attorney's fees and related costs. In that regard, Plaintiff has shown that CRA's conduct has violated Rules 26, 33, and 34. Neither the First Response nor the Second Response has offered a substantial

53

justification for CRA's noncompliance or demonstrated that a partial award of attorney's fees qualifies as unjust.

**IT IS THEREFORE ORDERED** that the First Motion (Docket Entry 155) and the Second Motion (Docket Entry 161) are **GRANTED IN PART** and **DENIED IN PART.**

**IT IS FURTHER ORDERED** that, on or before May 7, 2021, CRA shall either (i) supplement its Answers to Interrogatories and Responses to Document Requests, to the extent it previously withheld responsive information solely on the basis of its general objections (or those asserted in the preliminary statement), or (ii) serve a Notice indicating that no such withholding occurred.

**IT IS FURTHER ORDERED** that, on or before May 7, 2021, CRA shall provide Plaintiff with the Sales Index.

**IT IS FURTHER ORDERED** that, on or before May 7, 2021, Plaintiff shall serve an amended Rule 30(b)(6) Notice as detailed above and that the parties thereafter shall timely "confer in good faith about the matters for examination," Fed. R. Civ. P. 30(b)(6).

**IT IS FURTHER ORDERED** that the parties promptly shall confer in an attempt to resolve the apportionment of expenses and, on or before May 7, 2021, Plaintiff either shall file a Notice that the parties have resolved the issue of expense-shifting related to the Motions or shall serve CRA with a statement of reasonable expenses, including attorney's fees, incurred in making the Motions. Failure

by Plaintiff to comply with this Order will result in denial of any expense-shifting.

**IT IS FURTHER ORDERED** that, if Plaintiff timely serves such a statement of reasonable expenses, CRA shall file, on or before May 14, 2021, a Memorandum of no more than five pages contesting the reasonableness of such expenses.  Failure by CRA to comply with this Order will result in the Court ordering, upon the filing of a Notice by Plaintiff of her reasonable expenses as contained in the statement served upon CRA, the payment of a portion of those expenses by CRA and/or its counsel.

**IT IS FURTHER ORDERED** that, if CRA timely files such Memorandum, on or before May 21, 2021, Plaintiff shall file a Response of no more than five pages.  Failure by Plaintiff to comply with this Order will result in denial of any expense-shifting of sums contested by CRA as unreasonable.

**IT IS FURTHER ORDERED** that, on or before May 28, 2021, CRA may file a Reply of no more than three pages to any Response timely filed by Plaintiff.

55

**IT IS FURTHER ORDERED** that, upon completion of the foregoing briefing or the time for such briefing, the Clerk shall refer this matter back to the undersigned United States Magistrate Judge for further action.

This the 30th day of April, 2021.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**
