## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
## CIVIL ACTION NO. 1:20-cv-00098

| | |
|---|---|
| LAURA M. WALLS, Individually, and as Executor of the Estate of ROBIE W. WALLS, | ) ) ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| FORD MOTOR COMPANY, et al., | ) |
| | ) |
| Defendants. | ) |

### Defendants' Brief in Response to Plaintiff's *Daubert* Motion
### to Exclude Evidence of Occupational or Bystander Exposure to Asbestos
### in the U.S. Navy and to Exclude Defense Naval Researchers

Defendants Strick Trailers, LLC, Cummins Inc., and Federal-Mogul Asbestos

Personal Injury Trust as successor to Felt Products Manufacturing Company

(collectively "Defendants") file this Brief in Response to Plaintiff's Daubert Motion

to Exclude Evidence of Occupational or Bystander Exposure to Asbestos in the U.S.

Navy and to Exclude Defense Naval Researchers [Docket Nos. 264 and 267] and

respectfully show the Court as follows:

### Statement of Facts

I.      **Mr. Walls experienced asbestos exposure in the U.S. Navy.**

1

Plaintiff's counsel seeks to exclude relevant evidence related to Robie Walls' work in the U.S. Navy and aboard U.S. Navy ships in a motion styled as a "*Daubert*" motion. The motion, however, merely mentions Rule 702 once in passing, and never undertakes a Rule 702 analysis. Further, Plaintiff's counsel incorrectly asks the Court to exclude experts, deems Mr. Walls' entire U.S. Navy career "irrelevant" (without undertaking a Rule 401 analysis), and seeks exclusion of any mention of Mr. Walls' military service. To be clear, Plaintiff's motion is not a *Daubert* motion or a motion under Rule 401 or 403. Further, the motion seeks to exclude relevant evidence that does not fit with the one-sided narrative they wish to present at trial. Plaintiff's motion should be denied.

Mr. Walls served in the U.S. Navy from 1955 through 1959.[1]  He attended basic training in Bainbridge, Maryland, before being assigned to the U.S.S. Charles H. Roan (DD-853).[2] While on the U.S.S. Roan, he served as a torpedo man.[3]  The ship went on cruises to Italy, Spain, and Cuba with a drydock in the Brooklyn Shipyard.[4]  Wanting a change from the lengthy cruises on the U.S.S. Roan, he requested a transfer, and was assigned to the U.S.S. Arcadia (AD-23), which had a

---

[1] Plaintiff's Complaint; Paragraph 41, p. 15 [Docket No. 1].
[2] **Exhibit 1** – Deposition of Robie Walls, 2/26/2020, p. 25.
[3] Id. at p. 26.
[4] Id. at pp. 29-30.

Case 1:20-cv-00098-LCB-LPA   Document 347   Filed 08/20/21   Page 2 of 19

home port of Newport, Rhode Island.[5]  Mr. Walls was on the Arcadia for one and one-half years.[6]

In the Complaint filed on January 30, 2020, Plaintiff asserted, "As a result of Plaintiff's Naval service as set forth above, it is believed that Decedent was exposed to asbestos dust, fibers and/or particles without controls, warnings or protection."[7] Mr. Walls then gave his sworn deposition testimony over the course of three days in February 2020. Following the deposition, in May 2020, Plaintiff served Rule 26 Initial Disclosures which list "Military Records" and articles such as "A Health Survey of Pipe Covering Operations in Constructing Naval Vessels" by Fleischer and Drinker as trial exhibits. Despite the alleged "uncontradicted testimony" that Mr. Walls' Naval career did not involve any asbestos products, Plaintiff filed a First Amended Complaint on August 28, 2020, and again asserted, "As a result of Plaintiff's Naval service as set forth above, it is believed that Decedent was exposed to asbestos dust, fibers and/or particles without controls, warnings or protection."[8] So it would appear that after Mr. Walls testified, his counsel felt that his U.S. Navy career was, in fact, relevant and a source of asbestos exposure,  pleading as much in an Amended Complaint almost six months after the deposition.

---

[5] Id. at p. 30.
[6] Id. at p. 31.
[7] Plaintiff's Complaint; Paragraph 41, p. 15 [Docket No. 1].
[8] Plaintiff's First Amended Complaint; Doc. 87, Paragraph 39, p. 14 [Docket No. 87].

3

**A. Captain Margaret McCloskey is qualified to testify regarding Navy asbestos usage and Mr. Walls' asbestos exposure.**

Margaret McCloskey served in the U.S. Navy for 27 years, ultimately achieving the rank of Captain.[9] Her service included work with Naval Engineering that provided her with experience in operations, maintenance, repair, modernization, and construction of all classes of steam and nuclear-powered ships and submarines.[10] Her service also included ship engineering education and training at Mare Island Naval Shipyard with tours of production shops and of vessels in overhaul and introductory "hands-on" training in ship construction and repairs.[11] Captain McCloskey later served in the planning and execution of ship repairs that were conducted by various trades including the pipe shop, weld shop, carpenter shop, heavy metal shop, canvass and lagging shop, and foundry.[12]

Captain McCloskey's career included responsibility for three year-long ship overhauls that involved the repair and modernization of a destroyer (like the U.S.S. Roan), a destroyer tender (like the U.S.S. Arcadia), and a cargo ship.[13] She oversaw

---

[9] **Exhibit 2** – Report of Margaret McCloskey, 3/8/2021.
[10] Id.
[11] **Exhibit 3**, Capt. McCloskey Curriculum Vitae.
[12] Id.
[13] **Exhibit 2**, at 2-3.

contractors and subcontractors to the systems of each ship who worked on valves, boilers, saltwater systems, steam heating systems, laundry equipment, galley systems, and electronic communications systems.[14] Her full education, training, and experience in the U.S. Navy is detailed further in her CV and report, but her career consists of 27 years in shipbuilding, repair, maintenance, and operation.[15] This includes work with ship plans, designs, specifications, manuals, qualified products lists, and other documents used by the U.S. Navy in the construction and repair of its ships like the U.S.S. Roan and U.S.S. Arcadia.[16]

Captain McCloskey researched records related to the original construction and later modernization of the U.S.S. Roan and the U.S.S. Arcadia.[17] The records identify the types of materials used in both those processes. Based on her experience, training, and research Captain McCloskey's opines that, it is evident that during Mr. Walls' time aboard the U.S.S. Roan and U.S.S. Arcadia, he would frequently be in close proximity to others working with numerous asbestos-containing products (which were specified and procured by the Navy) including pipe covering, block insulation, cements, cloths, insulation, adhesive, boiler refractory and insulation,

---

[14] Id. at 3.
[15] **Exhibit 3**.
[16] Id. at 6-8.
[17] Id. at 6.

5

electric cables and wires, and decking.[18] Asbestos-containing thermal insulation, lagging (including amosite felt), cement, and adhesive was specified in the construction of both the U.S.S. Roan and the U.S.S. Arcadia.[19] Further, asbestos-containing products were included in the specifications for repairs that were conducted on both ships through the time period when Mr. Walls was aboard each.[20]

### B. Christopher Herfel is a qualified Naval consultant.

Christopher Herfel is a Naval and maritime consultant with McCaffrey & Associates, a firm that specializes in research and analysis of ship design, construction, maintenance, and repair by performing exhaustive searches of Naval records, federal agency records, plans, photographs, and publications.[21] His CV and report detail extensive knowledge, skill, experience, training, and education in Naval and maritime issues.[22] He holds a Bachelor of Science degree in Marine Engineering from the U.S. Merchant Marine Academy, a Third Assistant Engineer's License issued by the U.S. Coast Guard, and served as a commissioned officer in the U.S. Naval Reserves for eight years as a Marine Engineer. In that capacity he became experienced in the maintenance, upkeep, activation, and deactivation of U.S. Navy

---

[18] Id.
[19] Id. at pp. 6-8.
[20] Id. at p. 8.
[21] **Exhibit 4**, Curriculum Vitae of Christopher Herfel.
[22] **Exhibit 5,** Report of Christopher Herfel, 3/1/21.

6

ships. In his current role as a consultant, he spent 17 years researching U.S. Navy policy, practices, doctrine, and procedures related to the materials used to construct, maintain, and repair U.S. Navy ships. He has expertise in ship design, development, maintenance, construction, and repair including the use of asbestos on Navy ships.

Mr. Herfel was disclosed as an expert to testify about, among other things, his research and analysis of U.S. Navy ship design, development, construction, maintenance and repair records, plans and photographs, and U.S. Navy personnel records related to Mr. Walls' service aboard the U.S.S. Roan and the U.S.S. Arcadia. He was further designated to testify and help the jury understand the historical use of asbestos in the U.S. Navy and Department of Defense, the hazards through the decades, and the implementation of asbestos-related safety and industrial health standards, and protocols from the 1930s through the 1980s.

In this case, in addition to reviewing case specific materials, such as the deposition testimony of Mr. Walls, written discovery, and the complaint, Mr. Herfel performed research on the design, construction, operational employment, and overhaul of the U.S.S. Roan and U.S.S. Arcadia.[23] He also researched U.S. Navy records on the duties, responsibilities, and training of Sailors in the Seaman rates and

---

[23] Id. p. 2.

Torpedoman's Mate rating.[24] The records researched included original business records, instructions, technical manuals, training manuals, specifications, standard, plans, photographs, daily correspondence, and other U.S. Navy publications.[25] Herfel found that the steam lines aboard the U.S.S. Roan and the U.S.S. Arcadia were insulated and lagged with asbestos-containing thermal insulation and the cold water lines were insulated with high amosite-content asbestos "anti-sweat" insulation to prevent condensation on the piping.[26] Mr. Herfel confirmed that his research found evidence of asbestos exposure.[27] Based on insulation weight summaries for destroyers of the same class as the U.S.S. Roan, the total amount of amosite asbestos-containing thermal insulation used in the construction of each ship of this class was over 25 tons.[28] Finally, his research also revealed that in 1978, the U.S. Navy identified the Torpedoman's Mate as the 17th most likely group of Sailors to develop and asbestos-related disease.[29]

**C. Plaintiff's experts agree that U.S. Navy asbestos exposure created a potential risk for Mr. Walls' mesothelioma.**

---

[24] Id.
[25] Id.
[26] Id. at p. 10.
[27] Id.
[28] Id. at p. 11.
[29] Id. at p. 27.

Plaintiff's experts, Drs. Maddox and Finkelstein, confirmed that the U.S. Navy used asbestos, Mr. Walls had potential asbestos exposure, and U.S. Navy personnel, like Mr. Walls, are at an increased risk for mesothelioma:

Q.      Do you agree that asbestos insulation was used on Navy ships in the 1950s?

[ ]

A.      Yes, I would agree.[30]

                                        ***

Q.       Was Mr. Walls exposed to asbestos while he was in the Navy?

A.      He may have been, yes.[31]

                                        ***

Q.      Historically speaking, there are many -- unfortunately, there are many men who served in the Navy in the '40s and '50s and '60s who developed mesothelioma as a result of that work, right?

[ ]

A.      Yes, that's true.[32]

Based on the evidence, Plaintiff's expert agree that Mr. Walls potential asbestos exposure in the U.S. Navy could be sufficient to cause disease:

Q.      If I give you a hypothetical and ask you to assume that Mr. Walls' only asbestos exposure have been his background exposure in the Navy and

---

[30] **Exhibit 6,** Dr. Maddox, p. 141 ll. 6-9 (Jun. 23, 2021).
[31] **Exhibit 7,** Dr. Finkelstein, p. 29 ll. 22-23 (Apr. 5, 2021).
[32] **Exhibit 6** at p. 77 ll. 15-20.

9

then he developed mesothelioma, would it be your opinion that that exposure was sufficient to cause his disease?

[ ]

A.     Well, that's my opinion that asbestos causes mesothelioma. If the only exposure that he had had been in the Navy, that would have been a contributing cause.[33]

Plaintiff's experts concede Mr. Walls' potential risk for mesothelioma form his service in the U.S. Navy.  Therefore, Captain McCloskey's and Christopher Herfel's expertise and testimony are critical to assist the jury in understanding the environment aboard the U.S.S. Roan and the U.S.S. Arcadia and Mr. Walls' work with and around amosite asbestos-containing materials used on both ships.

<u>Argument and Citation of Authority</u>

**A. Captain McCloskey and Chris Herfel are qualified under FRE 702 to Testify as Experts on the U.S. Navy, Ships, Products, and Exposure.**

Plaintiff has the burden in this case, but she confuses the burden of proof with the standard for expert testimony admissibility.  While Plaintiff suggests that defendants must satisfy the *Lohrmann* test, the *Daubert* standard only requires defendants establish the reliability and relevance of their experts.  *Pugh v. Louisville Ladder*, 361 F. App'x 448, 452-453 (4th Cir. 2010).  As they are eminently qualified and offer opinions based in fact and data, this Court should permit the testimony.

---

[33] **Exhibit 7** at pp. 109 l. 21 – 110 l. 6.

Mr. Walls had clear risks for asbestos disease from his U.S. Navy service and there is no legal justification for excluding evidence of his exposure. Initially, it bears repeating, Plaintiff's motion related to Captain McCloskey and Mr. Herfel is not actually a Rule 702 motion. Nevertheless, Rule 702 reads:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a)   the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b)   the testimony is based on sufficient facts or data;
>
> (c)   the testimony is the product of reliable principles and methods; and
>
> (d)   the expert has reliably applied the principles and methods to the facts of the case.

*Daubert v. Merrell Dow Pharms.*, 509 U.S. 579 (1993) and Rule 702 govern whether expert opinion testimony is admissible. Expert opinion testimony is admissible under *Daubert* and Rule 702 when it is reliable, e.g., is based on sufficient facts or data, employs reliable principles and methodology, is testable, has been subjected to peer-review and publication, or has an error rate. *See Daubert*, 509 U.S. at 592-94; *Yates v. Ford Motor Co.,* 113 F. Supp. 3d 841, 846-47 (E.D.N.C. 2015). The proper focus for a Rule 702/*Daubert* analysis is solely on the principles and methodology

11

experts employ, not on the conclusions that he or she generates. *See Daubert*, 509 U.S. at 594-95. Ultimately, the jury is responsible for resolving any conflict between competing expert testimony.

The proper inquiry of a Rule 702 analysis must be focused solely on the principles and methodology employed by the expert. *Daubert*, 509 U.S. at 594-595. Plaintiff's instant motion conveniently ignores that aspect of *Daubert*. In sum, Plaintiff seeks a ruling from the Court excluding the testimony of highly qualified experts on technical issues related to Navy ships even though: 1) Plaintiff has failed to make a record related to the principles and methodology of those experts and 2) Plaintiff has consistently pled throughout this case that Mr. Walls's service aboard the U.S.S. Roan and U.S.S. Arcadia were a source of asbestos exposure.

An expert can rely on facts or data in a particular case if "experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, [and] they need not be admissible for the opinion to be admitted." Fed. R. Evid. 703. Based on their education, training, and experience, Captain McCloskey and Mr. Herfel are qualified to provide expert testimony regarding Mr. Walls' service, including U.S. Navy and military specifications for asbestos-containing materials. They possess Naval and maritime education, training, and experience focused on ship construction, repair, and maintenance. Most

12

importantly, their education, training, and experience make both uniquely qualified to interpret U.S. Navy archival records.

Captain McCloskey's expertise meets the evidentiary thresholds for admissibility of expert opinion testimony.  To qualify as an expert, the expert testimony  must rest on a reliable foundation and be relevant to the issues in the case. *Nease v. Ford Motor Co.*, 848 F.3d 219, 229 *4th Cir. 2017) (quoting *Daubert*, 509 U.S. at 597).  Establishing reliability requires showing the expert opinion is "supported by adequate validation to render it trust worthy."  *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 260 (4th Circ. 1999).  The requirements are flexible with the court having broad latitude to consider whatever factors bearing on validity that the court finds to be useful[.]"  *Id.* at 261.

Captain McCloskey's education and training also makes her eminently qualified to testify regarding U.S. Navy service, construction, and products used, along with Mr. Walls' potential asbestos exposure.  She graduated from Belmont Abbey College with a B.S. in Biology in 1977 before receiving her M.S. in Mechanical Engineering from Naval Post Graduate School in 1986.[34]  Captain McCloskey then served in the U.S. Navy as an Engineering Duty Specialist, Hull Repair Officer, Supervisor of Shipbuilding, Conversion, and Repair, Staff Member

---

[34] **Exhibit 3** at p. 2.

of the Large Deck Amphibious Ships Office, Deputy Assistant Program Manager for Aircraft Carriers, and Chief Engineer for the U.S.S. Theodore Roosevelt.[35] During her service, she was charged with the oversight of the removal and remediation of asbestos-containing insulation installed on ships.[36] Since 2008, she served as an expert witness and archival researcher for Naval ships and ship systems.[37] Thus, unlike the average juror, she possesses specialized knowledge regarding ship construction, repair, systems, and the historical use of asbestos-containing products. Specifically, she will testify regarding U.S. Navy records located at the National Archives and Records Administration, including military specifications, ship drawings, training manuals, Qualified Product Lists, technical manuals, instruction books, and operating procedures.[38]

Captain McCloskey will testify that vessels, like the U.S.S. Roan and U.S.S. Arcadia were governed by specifications set forth at the time of the contract.[39] She will further testify that dozens, if not hundreds, of the specifications included the use of asbestos-containing insulation, lagging, cement, cloth, adhesive, and other products.[40]

---

[35] Id. at 1-2.
[36] **Exhibit 2**.
[37] **Exhibit 3** at p. 1.
[38] **Exhibit 2** at pp. 5-6.
[39] Id. at p. 7.
[40] Id. at pp. 6-11.

Case 1:20-cv-00098-LCB-LPA   Document 347   Filed 08/20/21   Page 14 of 19

Based on the specifications, time period, volume of asbestos onboard ship, and work conducted during a dry-docking overhaul in Brooklyn, Captain McCloskey will testify that Mr. Walls had asbestos exposure during his service in the U.S. Navy.[41] Captain McCloskey will explain to the jury the various types of asbestos used onboard the ships, the work performed, and Mr. Walls interaction with those products. Her testimony is the product of documented evidence, grounded in decades of experience and training.

Captain McCloskey's opinions are also relevant to Mr. Walls case and diagnosis. Fed. R. Evid. 401. U.S. Navy personnel have one of the highest rates of mesothelioma in the world. In a 2002 paper examining asbestos fiber burden levels, Dr. Roggli found that the U.S. Navy had the second highest number of mesothelioma cases, following only the similarly situated shipbuilding industry.[42] Therefore, Captain McCloskey's explanation of the asbestos-containing products onboard Mr. Walls' vessels provides foundation and explanation for the cause of his disease.

## Conclusion

The motion to exclude Defendants' witnesses under the guise of a "*Daubert*" motion is an attempt to induce the Court to exclude expert witnesses who provide

---

[41] Id. at pp. 11-15.
[42] Roggli, et al., "Malignant Mesothelioma and Occupational Exposure to Asbestos: A Clinciopathological Correlation of 1445 Cases," Ultrastruct. Pathol. (2002).

Case 1:20-cv-00098-LCB-LPA   Document 347   Filed 08/20/21   Page 15 of 19

relevant evidence instead of dealing with the witnesses on cross-examination. Any perceived deficiencies of these experts goes to the weight and credibility of their testimony, not whether they can testify at all. Plaintiff's counsel, in asking the Court to exclude qualified experts is attempting to contradict not only her Complaint and First Amended Complaint, but also reality. Experts McCloskey and Herfel will provide testimony about the presence of amosite throughout both ships including in areas such as passageways, berthing areas, off-duty spaces, shoppes, mess halls, and other living spaces. Therefore, Defendants request the Court deny Plaintiff's Motion and permit introduction of evidence of Mr. Walls' Navy exposure. However, to the extent necessary, Defendants request that this Court conduct a *Daubert* hearing to decide the issues presented in this motion.

## Certificate of Word Count

Counsel certifies that the Response complies with the word count requirements in LR 7.3(d).

This 20th day of August, 2021.

Respectfully submitted,

**Hawkins Parnell & Young LLP**

/s/ Eric T. Hawkins
North Carolina State Bar No. 48578

16

303 Peachtree Street, NE
Suite 4000
Atlanta, Georgia  30308
Telephone:  (404) 614-7400
Facsimile:  (404) 614-7500
E-mail: ehawkins@hpylaw.com

*Attorney for Defendant Strick Trailers, LLC*


**Hawkins Parnell & Young LLP**

/s/ Douglas A. Rubel
Douglas A. Rubel (N.C. 29824)
P.O. Box 1285
Cary, North Carolina 27512-1285
Telephone: (919) 523-3638
Facsimile: (404) 614-7500
E-mail: drubel@hpylaw.com

E. Elaine Shofner
Georgia State Bar No. 405361
By Special Appearance
Attorney for Cummins Inc
303 Peachtree Street, NE, Suite 4000
Atlanta, Georgia  30308
Telephone:  (404) 614-7400
Facsimile:  (404) 614-7500
E-mail: eshofner@hpylaw.com

*Attorneys for Defendant Cummins Inc.*

**WALL TEMPLETON & HALDRUP, P.A.**

/s/ Marie D. Lang, Esq.
Marie D. Lang (NCSB #27490)
1001 Wade Avenue, Suite 423
Raleigh, North Carolina 27605

17

Telephone: (919) 865-9500
Facsimile: (919) 865-9501
Email:       marie.lang@walltempleton.com

***Attorney for Defendant Federal-Mogul Asbestos
Personal Injury Trust as successor to Felt
Products Manufacturing Company***

18

**CERTIFICATE OF SERVICE**

I hereby certify that on  August 20, 2021, I electronically filed the foregoing

Defendants' Brief in Response to Plaintiff's *Daubert* Motion to Exclude Evidence

of Occupational or Bystander Exposure to Asbestos in the U.S. Navy and to Exclude

Defense Naval Researchers with the Clerk of Court, using the CM/ECF system, and

notification of each filing was served on counsel of record for the defendants as well

as all counsel of record.

This 20th day of August, 2021.

**Hawkins Parnell & Young LLP**

/s/ Eric T. Hawkins

North Carolina State Bar No. 48578

303 Peachtree Street, NE

Suite 4000

Atlanta, Georgia  30308

Telephone:  (404) 614-7400

Facsimile:  (404) 614-7500

E-mail: ehawkins@hpylaw.com

***Attorney for Defendant Strick Trailers, LLC***

19