IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

LAURA M. WALLS, *Individually*  )
*and as Executor of the Estate*  )
*of* ROBIE W. WALLS,  )
  )
                Plaintiff,  )
  )
v.  )    1:20-CV-98
  )
FORD MOTOR COMPANY, *et al.*,  )
  )
                Defendants.  )

**MEMORANDUM OPINION AND ORDER**

LORETTA C. BIGGS, District Judge.

Plaintiff Laura Walls, individually and as executor of the estate of now deceased husband Robie Walls, asserts claims for Mr. Walls' alleged wrongful death from mesothelioma. (ECF No. 138 ¶¶ 1, 2.) Plaintiff's Second Amended Complaint ("Complaint") specifically alleges that Mr. Walls' cumulative exposure to asbestos as a result of acts and omissions of a number of Defendants and their defective products, individually and together, was a substantial factor in causing Walls' mesothelioma and other related injuries and, therefore, is the legal cause of Mr. Walls' injuries and damages under North Carolina law. (*Id.* ¶ 9.) The Complaint alleges the following causes of action: Defective Design, Failure to Warn, Breach of Implied Warranty, Gross Negligence, Conspiracy, and Loss of Consortium. (*Id.* ¶¶ 49–98.)

Before the Court is Plaintiff's Motion for Summary Judgment Regarding Defendants' Affirmative Defenses, (ECF No. 245). Plaintiff argues that no genuine issue

of material fact exists as to a variety of affirmative defenses raised by Defendants, including: (1) contributory negligence, (2) assumption of risk, (3) sophisticated user/learned intermediary, (4) product misuse, (5) failure to mitigate, (6) intervening cause, (7) workers' compensation exclusivity, and (8) use of tobacco products. (ECF No. 246.) For the reasons stated herein, Plaintiff's motion will be granted in part and denied in part.

I. BACKGROUND

The evidence shows that Mr. Walls served in the Navy from 1955 to 1959, and then worked as a tractor-trailer[1] fleet mechanic for approximately 40 years from 1960 to 2002 at five different jobsites located primarily in North Carolina and Virginia. (Walls dep. I at 25:2-4, 54:10-24, 56:24.) His approximate employment history after the Navy is as follows: Mack Truck Company (1960–1962), Great Coastal Express (1962–1964), Archie Motors Freight (1964–1972), Adley Express/Yellow Freight Trucking, Richmond, VA (1972–1979), and Adley Express/Yellow Freight Trucking, Charlotte, NC (1979–2002). (*Id.* at 55:1–56:24, 183:19–184:2.)

As a fleet mechanic, Walls regularly performed maintenance on tractor-trailer brakes, clutches, and engines. (*Id.* at 66:2-5, 91:9–92:12, 96:12–99:11.) According to Walls, his brake replacement process remained substantially the same throughout his career. (*Id.* at 84:13–85:6, 115:20–116:4.) His brake work generally involved removing old brake linings, blowing excess brake dust out of brake drums using compressed air, sanding new brakes to ensure a "firm fit against the drum," and installing the new brakes. (*Id.* at 68:19–

---

[1] Tractor trailer trucks are large cargo trucks, commonly known as semi-trailers or eighteen wheelers. (*See* Walls dep. I at 57:4-18.) The truck is the "tractor" and the cargo box or platform it tows is the "trailer." (*Id.*)

2

69:3, 70:25–71:10, 80:4-13.) According to his testimony, some of the brakes Walls installed were rivetted. (Walls dep. II at 14:12-15.) Rivetted brakes required additional work to remove and install brake linings. (Walls dep. I at 77:1–78:4, 83:6–84:2; Walls dep. II at 50:16–52:25.) According to Walls, these activities spread large amounts of visible dust, which Walls inhaled. (Walls dep. I at 69:13-18, 69:25–70:4, 72:17–73:10, 76:4-21, 78:5-13, 83:12–84:12, 235:18–236:4.) He similarly testified that his clutch and engine work created dust and debris, which he inhaled. (*Id.* at 92:5-22, 95:11–96:2, 102:2-11, 103:24–105:14). Finally, Walls also testified that he inhaled dust while cleaning up brake, clutch, and gasket dust from his workstation after completing these repairs. (*Id.* at 86:13–89:11.)

Defendants are manufacturers of tractor-trailer products that Walls worked with during his career. Defendant Ford Motor Company ("Ford") manufactured and sold tractors and component parts. (*Id.* at 227:10-17.) Defendant Navistar, Inc., ("Navistar") is successor in interest to International Truck and Engine Corporation ("International"). (ECF Nos. 138 ¶ 31; 327 at 2 n.1.) International also manufactured and sold tractors and component parts. (Walls dep. I at 227:10-17.) Defendant Meritor, Inc. f/k/a ArvinMeritor, Inc. ("ArvinMeritor") is the successor in interest of Rockwell International Corp. ("Rockwell"). (ECF Nos. 138 ¶ 28; 276-5 at 1 n.1.) Rockwell manufactured and distributed aftermarket replacement tractor brakes. (Walls dep. I at 135:6-9.) Defendant Pneumo Abex LLC ("Abex") manufactured brake linings that were sold by another company under the brand name "Rayloc." (ECF No. 412-6 at 72:20-23, 79:3-8.) Defendant Morse TEC LLC ("Morse") is the successor-by-merger to Borg-Warner Corporation ("Borg-Warner"). (ECF No. 138 ¶ 30.) Borg-Warner manufactured aftermarket replacement tractor clutches.

3

(ECF No. 337-3 at 447:8–448:3.)  Defendant Cummins, Inc., ("Cummins") manufactured and sold tractor engines and engine gaskets.  (Walls dep. I at 171:16-23, 252:11-21.)

Defendant Strick Trailers, LLC, ("Strick") manufactured and sold trailers and component parts.  (*Id.*at 112:10-17.)  Defendant ZF Active Safety US, Inc., ("ZF") is the successor in interest to Fruehauf Trailer Corporation, which also manufactured and sold trailers and component parts.  (ECF Nos. 138 ¶ 12; 250-1 at 2.)  Defendant Carlisle manufactured and distributed brake linings that were used in Fruehauf trailers.  (ECF Nos. 406-5 at 39:7-16, 40:15-19, 62:10-14; 406-6 at 20; 406-7 at 19:6-15, 34:1-4.)

Walls testified that he performed maintenance on Ford tractors and Cummins engines at Archie's and Adley.  (Walls dep. at 148:12-16, 176:2–177:1, 186:12–187:5, 193:24–194:1, 227:10-21; ECF Nos. 463-6 at 11:14–12:8; 463-7.)  He performed maintenance on International tractors at Adley.  (Walls dep. III at 32:6-15, 55:12-15.)  He installed Rockwell and Rayloc brakes at Archie's.  (Walls dep. I at 201:14–202:15.)  Walls testified that he removed or replaced Borg-Warner clutches at Great Coastal, (*id.* at 139:24–140:9), Archie's (*id.* at 167:19–168:6), and Adley, (*id.* at 213:25–214:19).  Walls worked on Fruehauf trailers and Carlisle brakes at Archie's.  (*Id.* at 159:22–160:15.)  Finally, Walls worked on Strick trailers at Great Coastal, Archie's, and Adley.  (Walls dep. II at 174:21–175:12.)

These products contained asbestos.  (ECF Nos. 250-1 at 17; 250-4 ¶ 18; 250-5 at 3; 337-3 at 478:16-20; 412-7 at 34:24–35:14; 415-6 at 56:11-13, 57:6-11, 114:1-12, 116:9-19; 416-6 at 20:19-25; 419-5 at 51:19-25, 54:20-25; 463-5 at 13; 463-10 at 41:1-19; 463-36 at 158:14-20; 463-37; 463-38 at 52:8–53:14)  Some Defendants began phasing asbestos out from their products in the late 1970s, (*see, e.g.*, ECF Nos. 406-6 at 11–12, 20; 406-7 at 25:11-

4

14, 27:16-23), while others continued to sell asbestos-containing products into the 1990s, (*see, e.g.*, ECF No. 463-6 at 71:6-23).

Walls testified that he never received any warning from his employers about the risks associated with asbestos, never saw any signs in his workstation, and was never provided with any protective equipment. (Walls dep. I at 266:14–267:10; Walls dep. II at 66:9–67:7.) He never wore a mask or respirator when conducting this work and used compressed air to clean dust throughout his career. (Walls dep. I at 84:13–85:6, 115:20–116:4, 267:24–269:3.) This despite federal regulations adopted by the Occupational Health and Safety Administration ("OSHA") beginning in 1972. *See* Standard for Exposure to Asbestos Dust, 37 Fed. Reg. 11318, 11321 (June 7, 1972) (codified at 29 C.F.R. 1910.93a(g)). The 1972 regulation required employers to post conspicuous warnings in any location where airborne concentrations of asbestos may exceed federal limits. *Id.* OSHA furthered its work to curtail asbestos exposure in 1974 by prohibiting the use of compressed air for cleaning purposes except when reduced to a slow speed and paired with personal protective equipment. Hand and Portable Powered Tools and Equipment, General, 39 Fed. Reg. 23734, 23734 (June 27, 1974) (codified at 29 C.F.R. § 1910.242(b)).

Walls was diagnosed with mesothelioma on September 8, 2019. (ECF No. 415-17 at 8.) He died from the disease on October 15, 2020. (ECF No. 246-2.) Plaintiff claims that Walls' mesothelioma was caused by his exposure to asbestos while working with Defendants' products. (ECF No. 138 ¶ 9.)

## II. LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

5

Fed. R. Civ. P. 56(a). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party." *Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 568 (4th Cir. 2015) (internal quotations omitted). "[I]n deciding a motion for summary judgment, a district court is required to view the evidence in the light most favorable to the nonmovant . . . and to draw all reasonable inferences in his favor." *Harris v. Pittman*, 927 F.3d 266, 272 (4th Cir. 2019) (citing *Jacobs*, 780 F.3d at 568). A court "cannot weigh the evidence or make credibility determinations," *Jacobs*, 780 F.3d at 569, and thus must "usually" adopt "the [nonmovant's] version of the facts," even if it seems unlikely that the moving party would prevail at trial, *Witt v. W. Va. State Police, Troop 2*, 633 F.3d 272, 276 (4th Cir. 2011) (quoting *Scott v. Harris*, 550 U.S. 372, 378 (2007)).

Where the nonmovant will bear the burden of proof at trial, the party seeking summary judgment bears the initial burden of "pointing out to the district court . . . that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party carries this burden, then the burden shifts to the nonmoving party to point out "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis omitted). In so doing, "the nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence." *Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013). Instead, the nonmoving party must support its assertions by "citing to particular parts of . . . the record" or "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1); *see Celotex*, 477 U.S. at 324.

### III. DISCUSSION

#### A. A reasonable jury could find that Walls was contributorily negligent

Plaintiff first argues that no reasonable jury could find that Walls was contributorily negligent. (ECF No. 246 at 6–7.) Defendant Navistar agrees and has withdrawn this defense. (ECF No. 407 at 2.) The remaining Defendants argue that there is a genuine issue of material fact as to whether Walls' negligence caused injury. (ECF Nos. 402 at 6–9; 405 at 5–8; 408 at 5–8; 409 at 5–8; 411 at 4–6; 413 at 9–14; 422 at 7–10; 423 at 4–7.)

In North Carolina, contributory negligence is a complete bar to recovery in products liability claims. N.C. Gen. Stat. § 99B-4(3); *Nicholson v. Am. Safety Util. Corp.*, 488 S.E.2d 240, 244 (N.C. 1997). A claimant is contributorily negligent if he "failed to exercise reasonable care under the circumstances in his use of the product, and such failure was a proximate cause of the occurrence that caused the injury or damage complained of." § 99B-4(3); *Nicholson*, 488 S.E.2d at 244 ("[A] plaintiff is contributorily negligent when he fails to exercise such care as an ordinarily prudent person would exercise under the circumstances in order to avoid injury." (emphasis omitted)). A claimant may be contributorily negligent if his conduct ignores product warnings or other "unreasonable risks or dangers which would have been apparent to a prudent person exercising ordinary care for his own safety." *Smith v. Fiber Controls Corp.*, 268 S.E.2d 504, 507 (N.C. 1980). "[T]he existence of contributory negligence does not depend on plaintiff's *subjective* appreciation of danger; rather, contributory negligence consists of conduct which fails to conform to an *objective* standard of behavior." *Id.*

Defendant bears the burden of showing contributory negligence. *Atkins v. Moye*, 176 S.E.2d 789, 793 (N.C. 1970). Whether a claimant exercised reasonable care is a question

7

of fact for the jury that is "rarely appropriate for summary judgment." *Nicholson*, 488 S.E.2d at 244. "If there is more than a scintilla of evidence that plaintiff is contributorily negligent, the issue is a matter for the jury, not for the trial court." *Cobo v. Raba*, 495 S.E.2d 362, 365 (N.C. 1998).

Here, Walls testified that his mechanic work created clouds of dust, which he inhaled, but chose not to wear a mask or respirator. Defendants argue that a prudent person exercising ordinary care would have worn such protection for his own safety because the health risks of regularly inhaling any dust were generally known, even if Walls was unaware of the specific risks associated with asbestos dust. This is sufficient to create a genuine issue of material fact for the jury as to whether Walls' behavior constituted contributory negligence. Further, some Defendants have submitted evidence showing that they did include warnings with some of their products. (*See, e.g.*, ECF Nos. 250-1 at 9; 292-9 at 39; 413-4 at 43.) Walls testified that he never saw these warnings. Thus, there is a genuine issue of material fact as to whether Walls worked without a mask despite these warnings.

Thus, Plaintiff's Motion for Summary Judgment on the issue of contributory negligence will be granted as to Defendant Navistar but denied as to all other Defendants.

### B.     No reasonable jury could find that Plaintiff assumed the risks associated with asbestos

Plaintiff next argues that no reasonable jury could find that Walls assumed the risks associated with Defendants' products. (ECF No. 246 at 4–7.) Defendant Navistar agrees and has withdrawn this defense. (ECF No. 407 at 2.) Defendants Ford and Cummins did not respond to Plaintiff's motion as to this claim. (ECF Nos. 408, 422.) The remaining Defendants argue that there is a genuine issue of material fact as to whether Walls assumed

8

Case 1:20-cv-00098-LCB-LPA   Document 488   Filed 02/25/22   Page 8 of 20

risks associated with their products. (ECF Nos. 402 at 6–9; 405 at 5–8; 409 at 5–8; 411 at 4–6; 413 at 9–14; 422 at 7–10; 423 at 4–7.)

An assumption of risk defense requires a showing of (1) "knowledge of the risk" and (2) "consent by the plaintiff to assume that risk." *Fagundes v. Ammons Dev. Grp., Inc.*, 820 S.E.2d 350, 362 (N.C. Ct. App. 2018). Knowledge can be actual or constructive. *Id.* (citing *Batton v. Atl. Coast Line R. Co.*, 193 S.E. 674, 684 (N.C. 1937)). A claimant assumes the risks "normally incident to the occupation in which he voluntarily engages," but does not assume "other and extraordinary risks" unless "made aware of them, or until they become so obvious and immediately dangerous that an ordinarily prudent man would observe and appreciate them." *Cobia v. Atl. Coast Line R. Co.*, 125 S.E. 18, 21 (N.C. 1924). Consent "may be implied from conduct under the circumstances" if the claimant "enter[ed] freely and voluntarily into any relation or situation which presents obvious danger." *Allred v. Cap. Area Soccer League, Inc.*, 669 S.E.2d 777, 781 (N.C. Ct. App. 2008). Defendant bears the burden of proof on an assumption of risk affirmative defense. *Id.* Whether a claimant had actual or constructive knowledge of the risk and consented to that risk is a question of fact ordinarily reserved for the jury. *Bruce v. Flying Service*, 56 S.E.2d 560, 564 (N.C. 1949). However, assumption of risk is only a defense where the actual or constructive knowledge of the relevant risk "come[s] in time to be of use," meaning that the claimant obtained actual or constructive knowledge prior to engaging in the activity. *Cobia*, 125 S.E. at 20.

There is a "vital difference" between the defenses of contributory negligence and assumption of risk. *Horton v. Seaboard Air Line Ry. Co.*, 95 S.E. 883, 884 (N.C. 1918). While contributory negligence turns on the "doing of an imprudent act by the injured party,"

9

assumption of risk requires a showing of consent to an actually or constructively known risk. *Id.*

Here, Defendants first argue that generally available warnings, such as OSHA regulations and media reports, gave Walls constructive knowledge of the risks associated with asbestos. This evidence alone, however, does not establish that Walls had actual knowledge that Defendants' products contained asbestos, or that the risk associated with those products was "so obvious and immediately dangerous" that an objective observer would have appreciated it.

Second, Defendants argue that Walls' employers likely complied with OSHA regulations, which required employers to post warnings against asbestos inhalation in 1972 and prohibited the use of compressed air without protective equipment in 1974. *See* Standard for Exposure to Asbestos Dust, 37 Fed. Reg. at 11321; Hand and Portable Powered Tools and Equipment, General, 39 Fed. Reg. at 23734. The mere fact that Plaintiff's employer was *supposed* to warn Walls about asbestos, however, is insufficient to support a reasonable inference that it made the risks of asbestos "so obvious and immediately dangerous" that Walls should have appreciated the danger, especially when no other evidence suggests that Walls' employers complied with such OSHA regulations. Walls testified that his employers never warned him about asbestos, continued to provide him with compressed air to clean dust until his retirement in 2002, and took other protective measures for the first time in the 1990s. (*See* Walls dep. I at 268:4–269:4 (discussing installation of a ventilation system).) Defendants have submitted no evidence to dispute this testimony other than the simple fact that OSHA required otherwise. Since a jury is not permitted to speculate that Walls' employers complied with regulations when the only

10

available evidence supports that they did not, *see Hammett v. Paulding Cty.*, 875 F.3d 1036, 1049 (11th Cir. 2017) ("[A]n inference based on speculation and conjecture is not reasonable."), a reasonable jury could not find that Walls had actual or constructive notice based on these regulations alone.

Finally, certain Defendants argue that they included asbestos warnings with their products. ZF and Carlisle argue that boxes containing Fruehauf brakes included asbestos warnings beginning in 1973. (ECF No. 250-1 at 9.) ArvinMeritor argues that Rockwell included asbestos warnings in its field manuals in 1976, which were distributed directly to customers. (ECF No. 423-4 at 18–20.) However, Walls testified to working on Fruehauf trailers and installing Rockwell brakes while at Archie's, from 1964 to 1972. (Walls dep. I at 159:22–160:15, 201:14–202:15.) Thus, to the extent these Defendants' warnings could have given Walls actual or constructive knowledge of risk, the warnings did not "come in time to be of use."

Therefore, Defendants have failed to create a genuine issue of material fact as to whether Walls consented to an actually or constructively known risk posed by Defendants' products. Plaintiff's motion will be granted on the issue of assumption of risk.

### C. North Carolina does not recognize a sophisticated user or learned intermediary defense

Plaintiff next argues that she is entitled to summary judgment on Defendants' sophisticated user or learned intermediary defense to products liability. (ECF No. 246 at 7–9.) Defendants Strick, ZF, Navistar, Abex, Morse, and Meritor argue that Walls' employer was aware of the dangers associated with asbestos, absolving them of liability. (ECF Nos. 402 at 9–11; 405 at 8–11; 407 at 6–9; 409 at 8–10; 411 at 6–7; 423 at 7–8.)

11

Defendant Carlisle argues similarly that Fruehauf, the purchaser of its component parts, was a learned intermediary, absolving Carlisle of liability. (ECF No. 413 at 17–20.) Plaintiff responds that North Carolina does not recognize a sophisticated user or learned intermediary defense to products liability. (ECF Nos. 246 at 7–9; 439 at 6–8.)

This Fourth Circuit recently affirmed a district court decision which held: "North Carolina does not appear to have adopted the 'sophisticated user' defense, whereby a manufacturer is absolved of any duty to warn employees directly when a product is sold to an employer who is aware of its dangers." *Finch v. Covil Corp.*, 388 F. Supp. 3d 593, 608 (M.D.N.C. 2019) (citing *Willis v. Raymark Indus., Inc.*, 905 F.2d 793, 796 (4th Cir. 1990)), *aff'd*, 972 F.3d 507 (4th Cir. 2020). Defendants nevertheless argue that a state court *would* adopt a sophisticated user defense if given the opportunity and encourage this Court to "do as the state court would do if confronted with the same fact pattern." *Roe v. Doe*, 28 F.3d 404, 407 (4th Cir. 1994). Specifically, Defendants argue that the North Carolina Court of Appeals' ruling in *Ziglar v. E.I. Du Pont De Nemours & Co.*, 280 S.E.2d 510 (N.C. Ct. App. 1981), "suggests that North Carolina might adopt the sophisticated-user defense." (ECF No. 402 at 10.)

The Court finds *Ziglar* to be inapposite. There, the court held that a retailer may reasonably rely on warnings provided by a manufacturer and need not supplement those warnings with its own. *Ziglar*, 280 S.E.2d at 513–14. The court reasoned that, where a manufacturer has already provided a product warning, a retailer has no additional duty to create an additional warning. *Id.* This reasoning does not extend to the opposite situation where a manufacturer seeks to avoid liability by relying on downstream manufacturers or employers to provide a warning in its stead. A retailer can reasonably presume that a

12

warning created by the manufacturer, who most closely knows the product, is adequate. The same cannot be said in the opposite case, where a manufacturer fails to provide any warning but hopes that its customers will discover defects and create their own warnings.

Instead, North Carolina's product liability statutes suggest that North Carolina would not adopt a sophisticated user defense in this case. North Carolina law imposes a duty on manufacturers to provide adequate warning "[a]t the time the product [leaves] the control of the manufacturer or seller." N.C. Gen. Stat. § 99B-5(a)(1). The law provides one specific exception to this duty: prescription drug manufacturers are not liable to consumers if they provide an adequate warning to the prescribing physician. § 99B-5(c). This specifically enumerated exception suggests that no broader sophisticated user or learned intermediary defense exists in North Carolina. Thus, a North Carolina court would most likely not recognize the sophisticated user or learned intermediary defense in this case.

Plaintiff's Motion for Summary Judgment will be granted on this defense.

### D. A reasonable jury could find that Walls altered, modified, or misused Defendants' products

Plaintiff next argues that she is entitled to summary judgment on Defendants' product misuse defenses. (ECF No. 246 at 9–10.) Defendants Strick, Navistar, ZF, and Cummins have abandoned their product misuse defenses. (ECF Nos. 402 at 2; 407 at 2; *see generally* ECF Nos. 405; 422.) Defendants Ford, Abex, Morse, Carlisle, and ArvinMeritor maintain their product misuse affirmative defenses. (ECF Nos. 408 at 8–10; 409 at 10; 411 at 2; 413 at 16–17; 423 at 8–10.) They argue that Walls misused new brakes by sanding them before installation, absolving them of liability. (*Id.*) Ford additionally argues that Walls misused its products by cleaning them with compressed air. (ECF No. 408 at 9.)

13

Plaintiff argues that sanding the brakes was a foreseeable use and, therefore, did not constitute misuse as a matter of law. (ECF No. 246 at 9–10.)

Under North Carolina law, a manufacturer cannot be held liable for injuries proximately caused by "alteration or modification of the product" by a third party. N.C. Gen. Stat. § 99B-3(a). Section 99B-3(a) governs Defendants' "misuse" defense. *See Hastings ex rel. Pratt v. Seegars Fence Co.*, 493 S.E.2d 782, 784 (N.C. Ct. App. 1997). An "alteration or modification" is a change "in the design, formula, function, or use of the product from that originally designed, tested, or intended by the manufacturer." § 99B-3(b). Thus, use of a product "in a manner that could not reasonably be foreseen by the defendant" bars recovery where such misuse proximately caused the injury. *Jones v. Owens-Corning Fiberglas Corp.*, 69 F.3d 712, 721 n.14 (4th Cir. 1995) (quoting *Higgins v. E.I. DuPont De Nemours & Co.*, 863 F.2d 1162, 1167 (4th Cir. 1988)). The manufacturer bears the burden to show that an alteration or modification within the scope of the statute proximately caused the injury. *See Stark ex rel. Jacobsen v. Ford Motor Co.*, 723 S.E.2d 753, 763 (N.C. 2012) (Hudson, J., concurring in part and dissenting in part).

Here, A reasonable jury could find that sanding Defendants' brakes was an "alteration or modification" under North Carolina law. Defendants' evidence suggests that their brakes were designed to exact size specifications and did not need to be sanded. (*See, e.g.*, ECF Nos. 408-5 at 92:20–93:4; 413-3 at 69:2-23.) This design included a phenolic resin that encapsulated asbestos fibers. (ECF No. 413-3 at 85:7-15, 86:20–87:4.) According to Defendant Carlisle's designee, sanding brake linings changed this design and released those encapsulated fibers. (*Id.*) Thus, taking this evidence in the light most favorable to

14

Defendants, a genuine issue of material fact exists as to whether sanding Defendants' brakes constituted an alteration or modification, barring Plaintiff's recovery.[2]

A reasonable jury could also find that using compressed air to clean Ford's products was a misuse of those products after 1980. Plaintiff cannot recover for injuries arising from use of Ford's products that was contrary to express and adequate warnings attached to the product if Walls knew or reasonably should have known of such warnings. *See* N.C. Gen. Stat. § 99B-4(1); *Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 148 (4th Cir. 2001) ("[U]nder North Carolina law, the failure of a product user to follow express and adequate instructions or warnings absolutely precludes liability in a products liability action."). According to Ford, it included warnings in its package labels beginning in 1980 that stated: "Never remove dust or dirt from this assembly by blowing with compressed air." (ECF No. 463-5 at 17–18.) Walls testified that he never saw such warnings. Thus, there is a genuine issue of material fact as to whether Walls' continued use of compressed air after 1980 was contrary to an express and adequate warning of which Walls reasonably should have known.

Therefore, Plaintiff's motion for summary judgment as to misuse will be granted as to Defendants Strick, Navistar, ZF, and Cummins, but denied as to Defendants Ford, Abex, Morse, Carlisle, and ArvinMeritor.

---

[2] The Court does not reach the subsequent question of whether a reasonable jury could find that this alteration or modification proximately caused Walls's injury, as Plaintiff has not raised this argument.

15

### E. Defendants have abandoned their failure to mitigate defenses

Plaintiff next argues that no reasonable jury could find that Walls failed to mitigate his injury. (ECF No. 246 at 10–12.) No Defendant continues to assert a failure to mitigate defense. Thus, Plaintiff's motion will be granted as to these defenses.

### F. A reasonable jury could find that Walls' employers' conduct was an independent, intervening cause of Walls' illness

Plaintiff next argues that she is entitled to summary judgment on the issue of whether Walls' employers' conduct was an intervening, superseding, or insulating cause of his illness. (*Id.* at 12–13.) Defendants Strick, ZF, Navistar, Ford, Abex, and ArvinMeritor argue that a genuine issue of material fact exists as to whether Walls' employers' failure to warn Walls of the risk of asbestos exposure—or provide him with protective equipment—broke the chain of causation between Defendants' alleged negligence and Walls' injury. (ECF Nos. 402 at 10–11; 405 at 11–13; 407 at 6–9; 408 at 10–13; 409 at 10–11; 423 at 11–13.) ZF and Carlisle additionally argue that Walls's exposures to asbestos while in the Navy were the "sole and proximate cause" of his injuries. (ECF Nos. 405 at 12; 413 at 14–16.)

The doctrine of insulating negligence is not an affirmative defense but "an elaboration of a phase of proximate cause." *Clarke v. Mikhail*, 779 S.E.2d 150, 158 (N.C. Ct. App. 2015) (quoting *Childers v. Seay*, 155 S.E.2d 259, 263 (N.C. 1967)). Thus, the plaintiff bears the burden to prove that a defendant's negligence proximately caused the injury, meaning the chain of causation was not broken by an intervening cause. *Id.*

An intervening cause is "an independent force which entirely supersedes the original action and renders its effect in the chain of causation remote." *Adams v. Mills*, 322 S.E.2d 164, 173 (N.C. 1984). Third-party negligence may constitute an intervening cause if it

16

"break[s] the sequence or causal connection between the negligence of the [defendant] and the injury, so as to exclude the negligence of the [defendant] as one of the proximate causes of the injury." *Id.* at 172–73. To break the causal connection, intervening negligence must be "independent of" and "disconnected from" the defendant's original negligence. *Holt v. N.C. Dept. of Transp.*, 781 S.E.2d 697, 704 (N.C. Ct. App. 2016) (quoting *Riddle v. Artis*, 91 S.E.2d 894, 896–97 (N.C. 1956)). Third-party negligence does not break the causal chain if it is "only a condition on or through which the negligence of the defendant operates to produce an injurious result." *Id.* The "test" is one of foreseeability: whether the intervening conduct is "of such nature and kind that the original wrongdoer had no reasonable ground to anticipate it." *Adams*, 322 S.E.2d at 173. Whether intervening negligence was foreseeable is generally a question of fact for the jury. *Hairston v. Alexander Tank & Equip. Co.*, 311 S.E.2d 559, 567 (N.C. 1984).

Here, there is a genuine issue of material fact as to whether Walls' employers' failures to comply with OSHA regulations or product warnings was reasonably foreseeable. OSHA regulations adopted in 1972 and 1974 required employers like those of Walls to display warnings in work areas with high concentrations of asbestos and provide employees with protective equipment when engaging in certain activities, such as cleaning brakes and clutches with compressed air. *See* Standard for Exposure to Asbestos Dust, 37 Fed. Reg. at 11321; Hand and Portable Powered Tools and Equipment, General, 39 Fed. Reg. at 23734. Taking the evidence in the light most favorable to Defendants supports that Walls' employers complied with little if any of these regulations. A reasonable jury could find, though it need not find, that this was unforeseeable negligence that independently caused Walls' injuries. Plaintiff's claims against Defendants Strick, Navistar, and Ford arise in

17

whole or in part from work Walls did after OSHA began regulating his employers. Thus, Plaintiff's motion for summary judgment on this issue will be denied as to these defendants.

However, Plaintiff's claims against Defendants ZF, Abex, and ArvinMeritor arise out of work Walls did exclusively at Archie's between 1967 and 1972. No evidence suggests that Archie's failure to warn Walls during this time was unforeseeable when neither OSHA nor any Defendant instructed it to warn or protect its employees. Thus, the Court finds as a matter of law that Archie's alleged negligence from 1967 to 1972 was not an intervening cause sufficient to absolve ZF, Abex, or ArvinMeritor of liability, and Plaintiff's motion for summary judgment on this issue as to these defendants will be granted.[3]

### G. Plaintiff's product liability claims are not barred by North Carolina's Workers' Compensation law

Plaintiff next argues that she is entitled to summary judgment on Defendants' defenses arising from North Carolina's Workers' Compensation Act (the "Act"). (ECF No. 246 at 13–14.) Defendant Morse argues that Walls' employers are liable for his injuries in whole or in part and, therefore, the Act provides Plaintiff with an exclusive remedy. (ECF No. 411 at 7.) Plaintiff counters that the Act is the exclusive remedy only for claims against employers, not for product liability claims against manufacturers like Morse. (ECF Nos. 246 at 13–14; 439 at 12.)

The Act "provides the exclusive remedy for work-related injuries." *Bowden v. Young*, 768 S.E.2d 622, 624 (N.C. Ct. App. 2015). This restriction is limited to suits "against the

---

[3] ZF and Carlisle argue that Walls's exposures to asbestos while in the Navy were the "sole and proximate cause" of his injuries. (ECF Nos. 405 at 12; 413 at 14–16.) Plaintiff does not target this argument in her motion. (*See* ECF Nos. 246; 439.) Thus, the Court makes no finding as to whether a genuine issue of material fact exists with respect to this issue.

18

employer," however, N.C. Gen. Stat. § 97-10.1, and an employee "may sue third parties who are strangers to the employment," *Barrino v. Radiator Specialty Co.*, 340 S.E.2d 295, 302 (N.C. 1986), *overruled on other grounds by Woodson v. Rowland*, 407 S.E.2d 222 (N.C. 1991). In fact, the Act expressly contemplates that employees may recover in civil court from third parties. *See* § 97-10.2(h). Here, Morse was not Walls' employer. Thus, Plaintiff's suit against Morse is not excluded by the Act.

Morse cites *Radzisz v. Harley Davidson of Metrolina, Inc.*, 484 S.E.2d 566 (N.C. 1997), for the proposition that the Act was "never intended to provide the employee with a windfall of a recovery from both the employer and the third-party tort-feasor." *Id.* at 569. Here, however, there is no evidence that Plaintiff has recovered any damages from Walls' former employers. Further, *Radzisz* provides that, in cases of double recovery, the *employer* receives a lien on damages paid by the third party. *Id.* The Act does not prohibit a plaintiff from suing a third-party for injuries merely because the plaintiff's employer may also be liable.

Plaintiff's motion for summary judgment will be granted as to this claim.

### H. Defendants have abandoned their assertion that Walls' tobacco use caused his mesothelioma

Finally, Plaintiff argues that no evidence suggests that Walls used tobacco products or that such use could cause mesothelioma. (ECF No. 246 at 14.) Defendants have abandoned this argument on summary judgment. No Defendant continues to assert Walls' alleged tobacco use as a defense to Plaintiff's claims. Thus, Plaintiff's motion will be granted as to this defense.

For the reasons stated herein, the Court enters the following:

## ORDER

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Summary Judgment, (ECF No. 245), is GRANTED in part and DENIED in part. Summary judgment is GRANTED as to (A) Defendant Navistar's affirmative defense of contributory negligence; (B) all Defendants' affirmative defenses of assumption of risk; (C) all Defendants' affirmative defenses of sophisticated user or learned intermediary; (D) Defendants Strick, Navistar, ZF, Morse, and Cummins' affirmative defenses of product misuse; (E) all Defendants' affirmative defenses of failure to mitigate injury; (F) Plaintiff's claim that Walls' employer's negligence was not an intervening cause as to Defendants ZF, Abex, and ArvinMeritor; (G) all Defendants' affirmative defenses arising out of North Carolina's Workers Compensation Act; and (H) all Defendants' affirmative defenses arising from Walls' alleged use of tobacco products. It is DENIED as to all remaining claims and affirmative defenses.

This, the 25th day of February 2022.

/s/ Loretta C. Biggs
United States District Judge