IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| LAURA M. WALLS, *Individually* *and as Executor of the Estate* *of* ROBIE W. WALLS, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 1:20-CV-98 |
| FORD MOTOR COMPANY, *et al.*, | ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM OPINION AND ORDER**

LORETTA C. BIGGS, District Judge.

Plaintiff Laura Walls, individually and as executor of the estate of her now deceased husband Robie Walls, asserts claims for Mr. Walls' alleged wrongful death from mesothelioma. (ECF No. 138 ¶¶ 1, 2.) Before the Court is a Motion in Limine and Motion under Rule 702 of the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) to Exclude Flawed Data from a 1938 Saranac Laboratory Experiment, filed by Defendant Pneumo Abex LLC ("Abex"). (ECF No. 328.) For the reasons stated herein, Defendant Abex's motion to exclude the will be granted.

**I.     BACKGROUND**

In the interest of efficiency, the Court incorporates the factual and procedural background of this case as laid out in its prior orders concerning the parties' motions for summary judgment and various motions to exclude expert testimony. (ECF Nos. 487 at 4–7; 488 at 2–5; 539 at 2–3.)

During the course of this litigation, Plaintiff and Defendants have filed approximately twenty-five *Daubert* motions to exclude expert testimony.[1]  Following a conference with parties to discuss the need to eliminate duplicative motions, Defendants moved to join Defendant Ford's *Daubert* motions and briefing, thereby "obviat[ing] the need for the Court to issue separate rulings on" Defendants' remaining motions, with the exception of the instant motion. (ECF No. 539 at 3.)  Defendant Abex's motion to exclude data from the 1938 Saranac Laboratory experiment was not addressed in the Court's order resolving those *Daubert* motions.  Abex seeks to exclude all documents, lay testimony, and expert testimony about an alledged flawed finding of tumors in mice in Experiment 774 from the Saranac Laboratory. (ECF No. 332 at 1.)

The Court will now address Abex's motion herein.

## II.  STANDARD OF REVIEW

The admissibility of expert opinion is governed by Rule 702 of the Federal Rules of Evidence and the Supreme Court's landmark ruling in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).  The principles of *Daubert* and Rule 702 apply with equal force to scientific documentary evidence and lay testimony; trial courts "must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable."  *Daubert*, 509 U.S. at 589.

Rule 702 provides that a witness "who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:"

---

[1] *See* ECF Nos. 237; 239; 243; 251; 253; 255; 256; 258; 262; 264; 269; 273; 277; 279; 281; 297; 301; 303; 305; 307; 308; 309; 329; 333.

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Thus, expert testimony is admissible only if: (1) the expert is qualified, (2) the testimony is relevant, and (3) the testimony is based on reliable scientific methodology. *See Daubert*, 509 U.S. at 594–95. The Court must find these elements "at the outset" and "by a preponderance of proof." *Id.* at 592, 592 n.10.

An expert is *qualified* if he or she has "specialized knowledge that will assist the trier of fact in understanding the evidence or determining a fact in issue." *United States v. Young*, 916 F.3d 368, 379 (4th Cir. 2019). A witness' qualifications are "liberally judged by Rule 702," and "a person may qualify to render expert testimony in any one of the five ways listed" by the Rule: "knowledge, skill, experience, training, or education." *Kopf v. Skyrm*, 993 F.2d 374, 377 (4th Cir. 1993); *see also Cooper v. Lab'y Corp. of Am. Holdings, Inc.*, 150 F.3d 376, 380 (4th Cir. 1998).

An expert who is qualified must provide testimony that is relevant. An expert's opinion is *relevant* if it "fit[s]" the facts of the case, meaning it has "a valid scientific connection to the pertinent inquiry." *Daubert*, 509 U.S. at 591–92. "This ensures that the expert 'helps "the trier of fact to understand the evidence or to determine a fact in issue."'" *Sardis v. Overhead Door Corp.*, 10 F.4th 268, 281 (4th Cir. 2021) (quoting *Nease v. Ford Motor Co.*, 848 F.3d 219, 229 (4th Cir. 2017)). "Simply put, if an opinion is not relevant to a fact at issue, *Daubert* requires that it be excluded." *Id.*

3

Finally, relevant testimony must also be sufficiently reliable. An expert's opinion is *reliable* if it is "based on scientific, technical, or other specialized knowledge and not on belief or speculation." *Id.* (emphasis omitted) (quoting *Oglesby v. Gen. Motors Corp.*, 190 F.3d 244, 250 (4th Cir. 1999)). While the subject of scientific testimony must not "be 'known' to a certainty," it must be "derived by the scientific method" and "supported by appropriate validation—*i.e.*, 'good grounds,' based on what is known." *Daubert*, 509 U.S. at 590. Reliability is a "flexible" inquiry that must focus "solely on principles and methodology, not on the conclusions that they generate." *Id.* at 594–95.

In *Daubert*, the Court outlined a non-exhaustive list of factors to guide lower courts in assessing reliability, including: (1) whether the theory can be (and has been) tested; (2) whether it has been subjected to peer review and publication; (3) its potential rate of error; (4) whether standards exist to control the technique's operation; and (5) the degree of acceptance of the methodology within the relevant scientific community. *Id.* at 593–94. These factors "may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony," and courts have "broad latitude" in choosing which factors are "reasonable measures of reliability in a particular case." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150–53 (1999).

"Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it. Because of this risk, the judge . . . exercises more control over experts than over lay witnesses." *Daubert*, 509 U.S. at 595. Rule 702 "'imposes a special gatekeeping obligation on the trial judge' to 'ensur[e] that an expert's testimony both rests on a *reliable* foundation and is *relevant* to the task at hand.'" *Sardis*, 10 F.4th at 281 (quoting *Nease*, 848 F.3d

4

at 229–30). A court cannot "abandon the gatekeeping function" by deferring its responsibility to the jury. *Id.* at 282 (quoting *Kumho*, 526 U.S. at 159 (Scalia, J., concurring)). Ultimately, a district court's Rule 702 analysis "necessarily amount[s] to an exercise of broad discretion guided by the overarching criteria of relevance and reliability." *Belville v. Ford Motor Co.*, 919 F.3d 224, 233 (4th Cir. 2019) (quoting *Oglesby*, 190 F.3d at 250).

Although Rule 702 "is not intended to serve as a replacement for the adversary system," *In re Lipitor (Atorvastatin Calcium) Mktg., Sales Pracs. & Prod. Liab. Litig. (No II) MDL 2502*, 892 F.3d 624, 631 (4th Cir. 2018), this Court takes seriously its gatekeeping role to protect lay jurors from "powerful and quite misleading" scientific evidence and expert testimony, *Daubert*, 509 U.S. at 595.

## III. DISCUSSION

Abex moves to exclude all documents, lay testimony, and expert testimony about an allegedly flawed finding of tumors in mice from a 1938 experiment (that is, Experiment 774) at the Saranac Laboratory. (ECF No. 332 at 1.)

Abex does not dispute that its predecessor company was one of eleven sponsors of asbestosis research at Saranac Laboratory that began in 1936. (*Id.* at 2.) That research involved forty experiments (with various subparts) where different animals were exposed to asbestos fibers "for the purpose of determining more definitely the causes and effects of asbestosis." (*Id.*) One of those experiments—Experiment 774—included cats, rats, and mice that were exposed to long fiber chrysotile dust. (*Id.* at 4.)

5

In 1943, the Saranac Laboratory Director, Dr. Leroy Gardner, initially reported "unexpected finding of tumors in mice" in a preliminary report concerning Experiment 774, (*id.* at 4), but later made statements identifying the results as flawed:

> They are open to several criticisms. The strain of mice was not the same in the asbestos experiment as in many of the others cited; apparently the former were unusually susceptible. Not enough animals survived in the dust for longer than 15 months apparently necessary to produce many tumors. There were no unexposed controls for the same strain and age and no similar controls exposed to other dusts. It is hoped that this experiment can be repeated under properly controlled conditions to determine whether asbestos actually favors cancer of the lung.

(*Id.* at 5.) Dr. Gardner also suggested that "it would better be omitted from the present report" and noted how "[he] felt that these tumors probably were not due to the inhalation of dust and that in any case they should not be attributed to it in the absence of control animals of the same strain not exposed to dust." (*Id.*)

Around the same time as Dr. Gardner's preliminary report, he applied to the National Cancer Institute ("NCI") for research funding. (*Id.* at 5–6.) That proposal was reviewed—and rejected—in 1944 by a NCI committee of distinguished doctors, who cited Dr. Gardner's "failure to note the genetic strain and spontaneous tumor rate of the mice, lack of controls, and no experience in cancer research." (*Id.* at 6.)

When Dr. Gardner's final report about the asbestosis research at Saranac Laboratory was ultimately published in 1951, the flawed mouse tumor data from Experiment 774 was omitted. (*Id.* at 9.) The final report describes that "peribronchiolar fibrosis of the lung similar to human asbestosis" developed in guinea pigs, rats, cats, and rabbits, but not mice or dogs. (*Id.*)

The numerous flaws identified by Dr. Gardner and the NCI committee—namely, that the experiment included a strain of mice more susceptible to cancer for the asbestos dusting than the other dustings, a low sample size, and a lack of any control group of unexposed mice of the same strain and age—demonstrate that any documents, expert testimony, or lay testimony concerning the mice portion of Experiment 774 are unreliable under *Daubert* and Rule 702. In dutifully executing its gatekeeping function as to potentially misleading scientific testimony and evidence, this Court cannot allow evidence from an experiment where the lead scientist himself criticizes the methodology, a panel of distinguished doctors also criticizes that methodology, and that data remains unpublished.

Plaintiff argues that the Saranac Experiment 774 documents are relevant "[r]egardless of whether the weight to be afforded the underlying data is susceptible to attack." (ECF No. 403 at 1–2.) Specifically, Plaintiff contends the documentary evidence is relevant "not only to Abex's knowledge of the risks of asbestos exposure, but also to Abex's potential participation in industry efforts to shield that knowledge from the public." (*Id.* at 5.) Given the serious reservations and reliability concerns surrounding the mice-portion of Experiment 774 described above, the Court finds that any mention or reference to such data would be unduly confusing and misleading to the jury. The Court must protect lay jurors from "powerful and quite misleading" scientific evidence and expert testimony, *Daubert*, 509 U.S. at 595, and thus, the Court must and will exclude all documents, lay testimony, and expert testimony about the findings of tumors in mice from Experiment 774 at the Saranac Laboratory.

This Court's opinion tracks with at least three other federal courts, and numerous state courts, which have held similarly on the same mice-specific evidence from Experiment 774 at the Saranac Laboratory. *See, e.g.*, *Ellis v. Pneumo Abex Corp.*, 62 F. Supp. 3d 833, 841–42 (C.D. Ill. 2014); Order Granting Motion to Exclude Expert Testimony on Flawed Data from a Sarinac Laboratory Experiment, *Klopman-Baerselman v. Air & Liquid Systems Corp.*, No. 18-CV-5536 (W.D. Wash. Dec. 16, 2019); Oral Order Granting ECF No. 152, Motion in Limine to Exclude 1938 Saranac Laboratories Experiment by Pneumo Abex, LLC, *Phillips v. Pneumo Abex LLC*, No. 10-CV-262 (W.D.N.C. Aug. 21, 2015); Order #10, *Swasey v. Asbestos Cos.*, No. 15-758585 (Cal. Super. Ct. Aug. 20, 2015) (granting motion to exclude the Saranac experiment documents).

For the reasons stated herein, the court enters the following:

## ORDER

**IT IS THEREFORE ORDERED** that Defendant Abex's Motion in Limine and to Exclude, (ECF No. 328), is **GRANTED**. Specifically, the Court excludes all documents or lay testimony discussing the Saranac Laboratory data related to Dr. Gardner's Experiment 774, as well as expert testimony, reliance material, or expert impeachment material regarding such data as laid out in the chart in Abex's Motion in Limine and to Exclude, (ECF No. 328 at 3–4).

This, the 30th day of September 2022.

/s/ Loretta C. Biggs
United States District Judge
