LAURA M. WALLS, individually )
and as Executor of the Estate of )
ROBIE W. WALLS, )
                           )
         Plaintiff, )
                           ) Civil Action No. 1:20-cv-00098-LCB-LPA
    v. )
                           )
FORD MOTOR COMPANY, et al., )
                           )
        Defendants. )

## DEFENDANTS' BRIEF IN SUPPORT OF THEIR MOTION IN LIMINE TO EXCLUDE EVIDENCE THAT DEFENDANTS PURCHASED THEIR DEFENSE

Defendants Ford Motor Company, Pneumo Abex, LLC, and Strick Trailers, LLC file this Brief in Support of its Motion in Limine to Exclude Evidence that Ford Purchased its Defense, which includes Dr. David Michaels' book entitled "Doubt Is Their Product" and articles by Dr. David Egilman.

## INTRODUCTION

Defendants anticipate that Plaintiff will attempt to introduce evidence to claim Defendants "purchased" their defense. Specifically, they expect Plaintiff to offer the following: (1) prejudicial and highly charged statements contained in Dr. David Michaels' book entitled "Doubt Is Their Product"; and (2) various articles written by Dr. David Egilman, a plaintiff's expert in asbestos litigation. As the titles of these articles suggest – by using phrases such as "corporate obstruction," "manipulation," "corporate corruption," "maximizing profit and endangering health," and "negligence" – these are not scientific

# 10751478_1

publications, but "hit pieces" drafted by plaintiffs' experts in asbestos litigation. Defendants anticipate that Plaintiff will attempt to cross-examine defense experts using these opinion pieces that are highly inflammatory and entirely irrelevant to the instant litigation. Moreover, book and articles on which Plaintiff will base this line of questioning are nothing more than unreliable and inadmissible hearsay. Therefore, Defendants request that this Court preclude any and all reference, testimony, and use of such documents to claim that they "purchased" their defense, including reference to "Doubt Is Their Product."

## FACTUAL BACKGROUND

Asbestos plaintiffs commonly attack the Defendants' defense not by challenging its merits but by arguing they purchased it. While Plaintiff is, of course, free to explore alleged bias based on compensation for the studies defense experts rely on, it is quite another thing to allow Plaintiff to do so using articles drafted by plaintiffs' experts who made hearsay accusations – which are equally irrelevant and inflammatory – outside the courtroom and the reach of cross examination. Defendants expect Plaintiff, at a minimum, to cross-examine Dr. Dominik Alexander, an expert in the field of epidemiology, and Dr. Fionna Mowat, an expert at Exponent in the field of risk assessment, using these exceptionally prejudicial and highly charged statements.

## I. "Doubt is Their Product"

Defendants anticipate Plaintiff will offer evidence from the book "Doubt Is Their Product" by David Michaels, Ph.D. From 2009-2017, Dr. Michaels served as the Assistant Secretary of Labor of the Occupational Safety and Health Administration ("OSHA"); that

is, he was the head of OSHA. Defendants anticipate that Plaintiff will attempt to suggest that Dr. Michaels' opinion was the opinion of OSHA, even though he wrote the book in his own *personal* capacity and not in his official capacity while working for OSHA.

In his book, he argues that defense experts manufacture doubt on behalf of corporate defendants. He writes:

> As the product defense work has gotten more and more specialized, the makeup of the business has changed; generic public relations operations like Hill and Knowlton have been eclipsed by product defense firms, specialty boutiques run by scientists. Having cut their teeth manufacturing uncertainty for Big Tobacco, scientists at ChemRisk, the Weinberg Group, Exponent, Inc., and other consulting firms now battle the regulatory agencies on behalf of the manufacturers of benzene, beryllium, chromium, MTBE (methyl tertiary-butyl ether), perchlorates, phthalates, and virtually every other toxic chemical in the news today. Their business model is straightforward. They profit by helping corporations minimize public health and environmental protection and fight claims of injury and illness. In field after field, year after year, this same handful of individuals and companies comes up again and again.
>
> ****
>
> The range of their work is impressive. They have on their payrolls (or can bring in on a moment's notice) toxicologists, epidemiologists, biostatisticians, risk assessors, and any other professionally trained, media-savvy experts deemed necessary.
>
> ****
>
> Exponent's scientists are prolific writers of scientific reports and papers. While some may exist, I have yet to see an Exponent study that does not support the conclusion needed by the corporation or trade association that is paying the bill.
>
> ****
>
> Exponent specializes in literature reviews that draw negative conclusions. The company's scientists have produced several reviews of the asbestos literature for use in litigation, all of which conclude that certain types of asbestos and certain types of asbestos exposure are far less dangerous than previously believed.

David Michaels, *Doubt Is Their Product* 46-47, 49 (Oxford Univ. Press, 1st ed. 2008), pertinent sections attached as **Exhibit A**. Dr. Michaels ultimately characterizes Exponent, Dr. Mowat's employer, as "manufacturing doubt." While he makes these bold claims, Dr. Michaels does not point to technical flaws in any of Exponent's individual studies.

## II. Dr. Egilman's Articles

David Egilman is a non-practicing occupational medicine physician who is a professional expert witness for plaintiffs in toxic tort and pharmaceutical cases. Dr. Egilman has similarly targeted vehicle corporations, accusing them of purchasing a defense in asbestos cases. For example, in an article entitled "Abuse of Epidemiology: Automobile Manufacturers Manufacture a Defense to Asbestos Liability," Dr. Egilman argues that:

> [The] debate . . . about the relationship between asbestos exposure from automobile brake work and asbestos-induced cancer has been fueled by studies that have been funded by corporations with billions at stake in tort litigation.
>
> ****
>
> [A]sbestos-lined brake manufacturers have corrupted medical literature to escape liability.
>
> ****
>
> These companies have spent millions of dollars to generate these epidemiologic studies in order to refute claims of causation and thereby avoid compensation payments to victims and their families.

David S. Egilman, *Abuse of Epidemiology: Automobile Manufacturers Manufacture a Defense to Asbestos Liability*, 11 Int'l J. Occupational Env't Health 360, 360 (2005), attached as **Exhibit B.** Dr. Egilman also criticizes studies that companies like Ford

supposedly "purchased," arguing that the companies have manipulated the data. *Id.* at 362-68. The article ultimately concludes:

> The methods utilized by the asbestos and related industries— the redefinition of scientific criteria for determining cause–effect relationships and the manipulation of scientific data and scientific inferences—have obscured the true picture regarding asbestos exposure and mesothelioma.
>
> ****
>
> The asbestos industry and the automobile industry, rather than hiding behind a "dust cloud" of misleading science, should do the same and stop using asbestos in brakes worldwide.

*Id.* at 368-69.

A small sampling of Dr. Egilman's polemic "research" include such inflammatory titles as *Against Anti-health Epidemiology: Corporate Obstruction of Public Health via Manipulation of Epidemiology*, IJOEH 2007, 13(1:118-124); *Corporate Corruption of Science and Its Effects on Workers and the Environment*, IJOEH 2005, 11(4):331-337; *Corporate Corruption of the Medical Literature*, Accountability in Research Vol. 6, pp127-147. 1998; *Maximizing Profit and Endangering Health: Corporate Strategies to Avoid Litigation and Regulation*, IJOEH 2005:11(4)338-348; *American College of Occupational and Environmental Medicine: a Professional Association in Service to Industry*, IJOEH 2007; 13(4):404-426; and *Popcorn Worker Lung Caused by Corporate and Regulatory Negligence: An Avoidable Tragedy*, IJOEH 2007, 13(1)*:* 85-98.

## ARGUMENT

These serious accusations that corporate defendants such as Ford, Abex, and Strick

have purchased an epidemiology defense are prejudicial beyond repair. Plaintiff should not be permitted to recite the inflammatory accusations from Dr. Michaels' book or Dr. Egilman's articles because doing so would be unfairly prejudicial and mislead the jury. While Plaintiff can have her experts analyze or criticize perceived flaws in individual studies and challenge defense experts on the science, to allow unscientific ad homonym attacks on Defendants and their experts is inappropriate in a court of law. Moreover, Dr. Michaels' book and Dr. Egilman's articles are classic hearsay for which there is no exception, not to mention completely irrelevant.

## I. Dr. Michaels' book and Dr. Egilman's articles are irrelevant, prejudicial, and, likely to confuse and mislead the jury.

Evidence must be relevant to be admissible. Fed. R. Evid. 402. "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." *Id.* R. 401. The Court may exclude even relevant evidence if "its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." *Id.* R. 403. Balancing the prejudicial effect of evidence against its probative value rests within the sound discretion of the trial court. *See Fry v. Rand Constr. Corp.*, 964 F.3d 239, 250 (4th Cir. 2020).

First, Dr. Michaels' book and Dr. Egilman's articles are not relevant, as they do not make the existence of any fact of consequence of the determination of this action more or less probable than it would be without the evidence. Rather than actually challenging the

scientific evidence included in Defendants' defense, this evidence suggests that the science is biased – not based on any facts or data – but based on the biased opinions of plaintiffs' experts. Attacking a study's funding—rather than the methodology underlying the study— is not relevant to whether the study's conclusion is accurate. *See Yates v. Ford Motor Co.*, 113 F. Supp. 3d 841, 860 (E.D.N.C. 2015) (rejecting attack on alleged biases of studies of mesothelioma among auto mechanics because there was no proof underlying methodology of those studies was flawed).

Second, allowing evidence—particularly Dr. Michaels' book and Dr. Egilman's articles—that claims the Defendants purchased their defense by manipulating scientific evidence creates a substantial and unnecessary risk that the jury will base its decision not on the evidence, but on an improper reason. The sole purpose of alleging that Ford purchased its defense is to inflame the passions of the jury and prejudice it against Ford. *See Smithfield Foods, Inc. v. United Food & Commercial Workers Int'l Union*, 2008 WL 4610305, at *2 (E.D. Va. Oct. 14, 2008) (excluding evidence under Rule 403 that "would inevitably serve to inflame the passions of the jury"); *Va. Vermiculite, Ltd. v. W.R. Grace & Co.-Conn.*, 2000 WL 1456338, at *2 (W.D. Va. Aug. 14, 2000) (same).

Indeed, this risk is only heightened as to Dr. Michaels' work because he was a high-ranking official with OSHA. Therefore, his personal opinions carry the imprimatur of the federal government. Allowing Plaintiff to rely on his book would essentially make the federal government a witness on Plaintiff's behalf and create the risk that the jury would give his opinions additional, undue weight. *See*, *e.g.*, *City of New York v. Pullman Inc.*,

662 F.2d 910, 915 (2nd Cir. 1981) ("[A]s a so-called government report which in fact was incomplete and based largely on hearsay, the report would have been presented to the jury in 'an aura of special reliability and trustworthiness' which would not have been commensurate with its actual reliability"); *EMK, Inc. v. Fed. Pac. Elec. Co.*, 677 F. Supp. 2d 334, 338 (D. Me. 2010) ("Because it is the report of the Skowhegan Fire Department and carries the imprimatur of municipal government, the jury could well place undue emphasis on its summary causation conclusion on the assumption that it reflects the considered opinion of a fire investigator, who is cloaked with governmental objectivity and expertise."). Indeed, not only are Dr. Michaels' opinions inflammatory, but also his past position as head of OSHA heightens the risk of undue prejudice to Defendants and the potential for misleading the jury.

Lastly, if Plaintiff is permitted to reference this book during opening statements and/or at any time during trial, it will taint the jury against the Defendants and their experts, mainly Dr. Mowat and Dr. Alexander, before the jury even hears any evidence.

Thus, the Court should exclude any evidence of comments regarding the book and articles, as they are wholly irrelevant and highly prejudicial to the effect to outweigh any probative value the documents may possess.

## II. Dr. Michaels' Book and Dr. Egilman's articles should be excluded because they are inadmissible hearsay and not subject to any exception to the hearsay rule.

The Federal Rules of Evidence define hearsay as "a statement that (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). A "statement" is

"a person's oral assertion, written assertion, or nonverbal conduct, if the person intended it as an assertion." *Id.* R. 801(a). Hearsay is not admissible unless an exception applies. *Id.* R. 802. It is the proponent's "formidable burden" to establish that a hearsay exception applies. *United States v. Gutierrez*, 493 F. App'x 453, 455 (4th Cir. 2012) (citing *United States v. Blake*, 571 F.3d 331, 350 (4th Cir. 2009)).

The book and articles are hearsay and do not constitute any of the exceptions recognized in the Federal Rules of Evidence. The book and articles contain out-of-court statements, as they are written assertions not made in any court. Further, they reflect the thoughts and considerations of persons who will not be testifying in court and will not be subject to cross-examination. Defendants anticipate Plaintiff will attempt to refer to, elicit testimony about, or introduce the book and articles to prove the truth of statements contained in it. The hearsay rule, however, prohibits Plaintiff from offering these out-of-court statements as true. Lastly, Plaintiff cannot establish an exception applies to the book and articles because it does not meet the requirements of any of the hearsay exceptions in the Rules. Accordingly, the book and articles are inadmissible hearsay, and should be excluded from trial.

## III. The book and articles are not the type of materials properly relied upon by experts.

Federal Rule of Evidence 703 permits experts to use inadmissible evidence to formulate their opinions only "experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject." "A reliable expert opinion must be based on scientific, technical, or other specialized *knowledge* and not on belief or

speculation . . . ." *Oglesby v. Gen. Motors Corp.*, 190 F.3d 244, 250 (4th Cir. 1999) (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 590, 592-93 (1993)). "Reliability of specialized knowledge and methods for applying it to various circumstances may be indicated by testing, peer review, evaluation of rates of error, and general acceptability." *Id.* (citing *Daubert*, 509 U.S. at 593-94); *see also Daubert v. Merrell Dow Pharms, Inc.*, 43 F.3d 1311, 1315-16 (9th Cir. 1995) ("[S]omething doesn't become 'scientific knowledge' just because it's uttered by a scientist.").

Dr. Michaels' book and Dr. Egilman's articles constitute their personal opinions and conspiracy opinions—precisely *not* the type of evidence that any competent expert witness would reasonably rely on in formulating an opinion. *See Turpin v. Merrell Dow Pharms., Inc.*, 959 F.2d 1349, 1360 (6th Cir. 1992) (excluding an "expert" opinion because "[p]ersonal opinion, not science, is testifying here"); *In re Bausch & Lomb, Inc. Contact Lens Sol. Prods. Liab. Litig.*, 2009 WL 2750462, at \*9 (D.S.C. Aug. 26, 2009) ("An expert's subjective, personal beliefs or speculation fail to satisfy the requirement of reliability."). The Court cannot allow Plaintiff's experts to bolster their opinion evidence by testifying that the conclusions found by Dr. Michaels or Dr. Egilman—who will not be testifying—are "essentially the same." *United States v. Tran Trong Cuong*, 18 F.3d 1132, 1143 (4th Cir. 1994) ("We also find it was error to allow Dr. MacIntosh to bolster his opinion evidence by testifying that his conclusions as to Tran's actions were 'essentially the same' as those of Dr. Stevenson, who did not testify and whose report was not introduced into evidence."). Moreover, experts *may only* use inadmissible evidence "if

their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect." Fed. R. Evid. 703. As discussed in Section I, the prejudicial effect of introducing such evidence far outweighs any minimal probative value.

## CONCLUSION

For all the foregoing reasons, Defendants respectfully request that an Order precluding Plaintiff from claiming or suggesting that Defendants purchased their defense, including referencing or relying on Dr. Michaels' "Doubt Is Their Product" book and Dr. Egilman's articles at any point during trial.

This the 23rd day of December, 2022.

SMITH, ANDERSON, BLOUNT, DORSETT, MITCHELL & JERNIGAN, L.L.P.

/s/ Addie K.S. Ries
Kirk G. Warner
North Carolina State Bar No. 16238
Christopher R. Kiger
North Carolina State Bar No. 28618
Addie K.S. Ries
North Carolina State Bar No. 31759
Post Office Box 2611
Raleigh, North Carolina 27602-2611
Telephone: (919) 821-1220
Facsimile: (919) 821-6800
E-Mail: kwarner@smithlaw.com
ckiger@smithlaw.com
aries@smithlaw.com

*Attorneys for Ford Motor Company*

**HAWKINS PARNELL & YOUNG, LLP**

*/s/ Ollie M. Harton*
Ollie M. Harton
GA State Bar No. 334585
303 Peachtree Street, NE, Suite 4000
Atlanta, Georgia 30308
Telephone: (404) 614-7400
Facsimile: (404) 614-7500
E-mail: oharton@hpylaw.com

*/s/ Douglas A. Rubel*
Douglas A. Rubel
N.C. State Bar No. 29824
Post Office Box 1285
Cary, North Carolina 27512-1285
Telephone: (919) 523-3638
Facsimile: (404) 614-7500
E-mail: drubel@hpylaw.com

*Attorneys for Strick Trailers, LLC*

**MARON MARVEL BRADLEY ANDERSON & TARDY LLC**

/s/ *Yancey A. McLeod III*
Yancey A. McLeod III (Specially Appearing)
Gregory Warren Rouse, II (NC Bar No.: 5885)
259 Seven Farms Drive
Suite 300
Daniel Island, SC 29492
843-727-0001
ymcleod@maronmarvel.com
grouse@maronmarvel.com

*Attorneys for Defendant Pneumo Abex LLC*

<u>CERTIFICATE OF COMPLIANCE WITH WORD COUNT LIMITATION</u>

Pursuant to this Court's Local Rule 7.3(d)(1), I hereby certify that the word count of the forgoing Memorandum (excluding the caption, signature lines, and certificate of service) does not exceed 6,250 words.

SMITH, ANDERSON, BLOUNT, DORSETT, MITCHELL & JERNIGAN, L.L.P.

By: /s/ Addie K.S. Ries
Kirk G. Warner
North Carolina State Bar No. 16238
Christopher R. Kiger
North Carolina State Bar No. 28618
Addie K.S. Ries
North Carolina State Bar No. 31759
Post Office Box 2611
Raleigh, North Carolina 27602-2611
Telephone: (919) 821-1220
Facsimile: (919) 821-6800
E-Mail: kwarner@smithlaw.com
ckiger@smithlaw.com
aries@smithlaw.com

*Attorneys for Ford Motor Company*

CERTIFICATE OF SERVICE

I hereby certify that on December 23, 2022, the foregoing document was electronically filed with the Clerk of Court, using the CM/ECF system and notification of such filing will be sent electronically by the ECF system to all counsel of record in this case.

SMITH, ANDERSON, BLOUNT, DORSETT, MITCHELL & JERNIGAN, L.L.P.

By: /s/ Addie K.S. Ries
Kirk G. Warner
North Carolina State Bar No. 16238
Christopher R. Kiger
North Carolina State Bar No. 28618
Addie K.S. Ries
North Carolina State Bar No. 31759
Post Office Box 2611
Raleigh, North Carolina 27602-2611
Telephone: (919) 821-1220
Facsimile: (919) 821-6800
E-Mail: kwarner@smithlaw.com
ckiger@smithlaw.com
aries@smithlaw.com

*Attorneys for Ford Motor Company*